REVISED, APRIL 6, 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-41254

_____


JOSE EVARISTO REYES-REQUENA

                          Petitioner-Appellant

     v.

UNITED STATES OF AMERICA

                          Defendant-Appellee

_____

Appeal from the United States District Court
for the Eastern District of Texas
_____

February 28, 2001

Before KING, Chief Judge and PARKER, Circuit Judge, and FURGESON,[*] District Judge.

KING, Chief Judge:

     Jose Evaristo Reyes-Requena appeals the dismissal of his 28 U.S.C. § 2241 petition.  For the following reasons, we REVERSE and REMAND.

## I. FACTUAL AND PROCEDURAL BACKGROUND

     In 1990, Jose Evaristo Reyes-Requena was convicted in the

_____

     [*]   District Judge of the Western District of Texas, sitting by designation.

Southern District of Texas ("Southern District") of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841, and use of a firearm during the commission of a drug-trafficking offense, in violation of 18 U.S.C. § 924(c)(1). His convictions were affirmed on direct appeal. See United States v. Reyes-Requena, 940 F.2d 655 (5th Cir. 1991) (unpublished). In 1995, he filed a pro se 28 U.S.C. § 2255 motion in the Southern District, which was dismissed.

In July 1996, following the Supreme Court's decision in Bailey v. United States, 516 U.S. 137 (1995),[1] Reyes filed a second § 2255 motion in the Southern District and argued that Bailey rendered his § 924(c)(1) conviction invalid. The motion was dismissed without prejudice because Reyes had failed to obtain permission from the court of appeals to file a successive § 2255 motion. See 28 U.S.C. § 2255 (2000). Reyes then sought and obtained the requisite permission from a panel of this court.

With this authorization in hand, Reyes refiled his second § 2255 motion in the Southern District on December 26, 1996. The Southern District denied the motion, granting the government's motion to dismiss on procedural grounds (i.e., that Reyes's motion did not satisfy § 2255's requirements for successive motions). In July 1997, Reyes filed a motion requesting the

---

[1]    The Supreme Court held that "use" in § 924(c)(1) required "an active employment of the firearm by the defendant." Bailey, 516 U.S. at 143 (emphasis added).

2

Southern District to "reconsider" its dismissal of his second § 2255 motion.  Concluding that Reyes's motion failed to meet the stringent requirements for second or successive § 2255 motions, the Southern District determined Reyes had recourse under § 2255's "savings clause."[2]  Because the second § 2255 motion was inadequate to test the legality of Reyes's § 924(c) conviction, the Southern District determined that he could raise his claim in a 28 U.S.C. § 2241 habeas petition.  The Southern District therefore construed Reyes's second § 2255 motion as a § 2241 petition and transferred the petition to the Eastern District of Texas ("Eastern District"), where Reyes was incarcerated.[3]

The Eastern District, in direct opposition to the holdings of the Southern District, concluded that Reyes's claim was cognizable under § 2255, and as a result, § 2255's savings clause was inapplicable.  The Eastern District therefore dismissed the § 2241 petition, and Reyes timely appeals.

---

[2]  "An application for a writ of habeas corpus . . . shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."  28 U.S.C. § 2255 (2000).

[3]  Section 2241 petitions must be filed in the district of the prisoner's incarceration.  See 28 U.S.C. § 2241(a) (1994).  Section 2255 motions, on the other hand, must be filed in the district in which the prisoner was sentenced.  See § 2255 ¶1 (because Reyes was sentenced in the Southern District, he had filed his § 2255 motions in that district).

## II. EASTERN DISTRICT'S JURISDICTION OVER REYES'S CLAIM

We are confronted with orders from two district courts, with each court concluding that the other district court properly has jurisdiction. Further, the government, through its prosecutors in the Southern and Eastern Districts, has advocated two mutually exclusive positions in this litigation.[4] This predicament arose from efforts to bring sense[5] to portions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which this circuit has not yet interpreted.[6]

A claim presented in a second or successive motion under § 2255 that was not presented in a prior application must be dismissed unless the applicant shows, inter alia, that the claim relies on a new rule of constitutional law that was previously

---

[4]   In the event that we agreed with the Eastern District, Reyes, on December 16, 1999, filed a motion in the Southern District requesting the court to recall its previous order transferring the case to the Eastern District. However, the government opposed Reyes's motion to recall the transfer order (notwithstanding the fact that it had argued in the Eastern District that Reyes did not require access to § 2241 because he could file under § 2255 in the Southern District). On February 11, 2000, the Southern District denied Reyes's request.

[5]   "All we can say is that in a world of silk purses and pigs' ears, [AEDPA] is not a silk purse of the art of statutory drafting." Lindh v. Murphy, 521 U.S. 320, 336 (1997).

[6]   Although Reyes filed his first § 2255 motion prior to the enactment of AEDPA, his second motion is nevertheless subject to AEDPA's requirements because AEDPA governs applications filed after its enactment. See United States v. Orozco-Ramirez, 211 F.3d 862, 865-66 (5th Cir. 2000); Graham v. Johnson, 168 F.3d 762, 775 (5th Cir. 1999), cert. denied, 120 S. Ct. 1830 (2000).

unavailable and has been made retroactive to cases on collateral review by the Supreme Court.  See 28 U.S.C. § 2255 (2000).  The Southern District, relying on United States v. McPhail, 112 F.3d 197, 199 (5th Cir. 1997), treated Bailey as a substantive, non-constitutional decision concerning the reach of a federal statute (and not as a new rule of constitutional law).  Therefore, because the Bailey claim in Reyes's second § 2255 motion did not satisfy the requirements of § 2255, the Southern District concluded, pursuant to 28 U.S.C. § 2244(b)(4), that it could not review the merits of the motion.

The Eastern District disagreed, relying on a statement in United States v. Rocha, to the effect that a prisoner "could hardly be expected to have raised a Bailey claim before Bailey was decided, but his proper course of action is to file a successive § 2255 motion."  109 F.3d 225, 229 (5th Cir. 1997).  The Eastern District further noted that a panel of this court had certified Reyes's second § 2255 motion, making it clear that the Southern District could consider the merits of his Bailey claim.

On appeal, Reyes contends that the Eastern District erred and that his claim is properly cognizable under § 2241.[7]  The

---

[7]    If we determine that the Eastern District did not err (i.e., that Reyes's Bailey claim should be examined under § 2255), Reyes argues, in the alternative, that the outright dismissal of his petition in the Eastern District was in error (i.e., that the case should be transferred back to the Southern District).

5

government, on the other hand, asserts that the Eastern District did not err, requesting that Reyes's second § 2255 motion be reopened in the Southern District, and his Bailey claim decided on the merits.

We first find that §§ 2244(b)(3)(C) and 2244(b)(4) have been incorporated into § 2255, thus making the Southern District's evaluation of § 2255's requirements for second or successive motions appropriate. Second, we agree with the Southern District's determination that Reyes's Bailey claim is not cognizable in a successive § 2255 motion. Finally, we also agree with the Southern District that the appropriate vehicle for Reyes's Bailey claim is a habeas writ such as § 2241.

### A. Sections 2244(b)(3)(C) and 2244(b)(4) Have Been Incorporated into Section 2255

The final paragraph of § 2255 states: "A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain [one of the following two requirements]." 28 U.S.C. § 2255 (2000) (emphasis added). Section 2255 fails to specify precisely which provisions of § 2244 are incorporated into § 2255.[8] We have also

---

[8]  State prisoners file their federal habeas corpus petitions under 28 U.S.C. § 2254, while federal prisoners file collateral review motions under § 2255. Section 2244 primarily deals with the requirements for § 2254 petitions. When AEDPA amended the various collateral review and habeas corpus statutes, it did not include the details applicable to successive § 2255 motions; rather, it simply referred to the § 2254 procedures detailed in § 2244.

6

not previously delineated the extent to which § 2244 has been incorporated into § 2255 by virtue of its final paragraph.[9]

This case presents two specific questions regarding § 2244 incorporation. We must first determine whether § 2255 incorporates § 2244(b)(3)(C) because the Southern District implicitly relied upon that incorporation in its analysis.[10] Second, we must determine whether § 2244(b)(4)[11] has been incorporated into § 2255 because the Southern District explicitly relied upon that provision to conduct its own threshold analysis of Reyes's second § 2255 motion to ascertain whether the motion

---

[9] While few courts have considered this issue, two of our sister circuits have discussed the incorporation of various § 2244 provisions into § 2255. See infra Part II.A.1 & 2; see also Triestman v. United States, 124 F.3d 361, 367 (2d Cir. 1997) (holding that § 2244(b)(3)(D) and (E) apply to § 2255 successive motions); Alexander v. United States, 121 F.3d 312, 314 (7th Cir. 1997) (stating that § 2244(b)(1) is applicable to § 2255 successive motions); Hope v. United States, 108 F.3d 119, 119 n.* (7th Cir. 1997) (finding § 2244(b)(3)(D) applicable to § 2255 successive motions). One circuit implicitly assumed incorporation of § 2244(b)(3)(D) without discussion by simply noting "the 30-day time limitation established by 28 U.S.C.A. § 2244(b)(3)(D) for decisions on requests for permission to institute a second or successive § 2255 proceeding." In re Vial, 115 F.3d 1192, 1194 n.3 (4th Cir. 1997) (en banc).

[10] The Southern District stated in its Order that "the Fifth Circuit found that petitioner had made a prima facie showing that the application satisfies the requirements of §§ 2244 and 2255." (emphasis added) (the "prima facie showing" language is from § 2244(b)(3)(C)).

[11] "A district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." 28 U.S.C. § 2244(b)(4) (2000).

7

satisfied the requirements for successive § 2255 motions.[12]  We find that § 2255 incorporates both § 2244(b)(3)(C) and § 2244(b)(4).

*1. Section 2244(b)(3)(C) Has Been Incorporated into Section 2255*

Section 2244(b)(3)(C) states:  "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a <u>prima facie showing</u> that the application satisfies the requirements of this subsection."  28 U.S.C. § 2244(b)(3)(C) (2000) (emphasis added). It thus provides that a court of appeals must evaluate requests to file second or successive applications under a "prima facie" standard.

There is a dearth of jurisprudence on whether § 2244(b)(3)(C) has been incorporated into § 2255.  This question has been directly addressed only by the Seventh Circuit, alluded to by the Second Circuit, and mentioned in passing by the Tenth Circuit.  Each of these circuits views § 2244(b)(3)(C) as applicable to successive § 2255 motions.

Writing for a panel of the Court of Appeals for the Seventh Circuit, Judge Posner held that "in considering an application under section 2255 for permission to file a second or successive motion [a court of appeals] should . . . insist only on a <u>prima</u>

---

[12]  The Southern District made this determination notwithstanding the fact that a previous panel of this court had already granted Reyes permission to file his second § 2255 motion.

8

<u>facie showing</u> of the motion's adequacy."  <u>Bennett v. United States</u>, 119 F.3d 468, 469 (7th Cir. 1997) (emphasis added).  Finding that the legislative history does not distinguish between successive motions by state[13] or federal prisoners, Judge Posner concluded that the court could not "think of any reason why the standard for federal prisoners would be more stringent" than for state prisoners.  <u>See</u> <u>id.</u>[14]  This Seventh Circuit holding comports with an earlier statement from the Second Circuit, which had summarily noted in passing: "Subsection (C) [of § 2244(b)(3)] provides the standard for certification, has no counterpart in § 2255, and therefore apparently applies to § 2255."  <u>Liriano v. United States</u>, 95 F.3d 119, 121 n.1 (2d Cir. 1996).  It also tracks the Tenth Circuit's implicit assumption that § 2255 incorporated § 2244(b)(3)(C).  <u>See</u> <u>Coleman v. United States</u>, 106 F.3d 339, 341 (10th Cir. 1997) (stating that the petitioner had "failed to make the <u>prima facie showing</u> required by § 2255" (emphasis added)).

We agree with our sister circuits and find that § 2244(b)(3)(C) has been incorporated into § 2255.  A plain reading of the text accommodates this view, as it states that successive § 2255 motions "must be certified as provided in

---

[13]  <u>See</u> <u>supra</u> note 8.

[14]  The court thus found that the difference in wording between § 2255 ("certified . . . to contain") and § 2244(b)(3)(C) ("prima facie showing") to be "immaterial."  <u>See</u> <u>Bennett</u>, 119 F.3d at 469.

9

section 2244." See United States v. Villa-Gonzalez, 208 F.3d 1160, 1164 (9th Cir. 2000) ("Section 2255, by its terms, expressly incorporates the procedures for certification of the filing of a second or successive motion set forth in section 2244."); see also supra note 9. Further, "[i]n the absence of . . . specification, it is logical to assume that Congress intended to refer to all of the subsections of § 2244 dealing with the authorization of second and successive motions." Triestman v. United States, 124 F.3d 361, 367 (2d Cir. 1997); see also 2 JAMES C. LIEBMAN & RANDY HERTZ, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE § 41.7d, at 1609 (3d ed. 1998) ("[Section 2255] appears to adopt the same procedure for section 2255 cases as applies to successive state-prisoner habeas corpus petitions [under § 2244]." (emphasis omitted)).

Although the legislative history is silent as to the extent of § 2244 incorporation into § 2255, we also can find no intent to treat federal and state prisoners differently. See Bennett, 119 F.3d at 469; cf. United States v. Burch, 202 F.3d 1274, 1278 (10th Cir. 2000) (stating that "there is simply no indication that Congress intended to treat state and federal habeas petitioners differently" and thus interpreting the term "final" in § 2255's limitations provision to track the meaning of the term "final" in the analogous § 2254 limitations provision); Kapral v. United States, 166 F.3d 565, 575 (3d Cir. 1999) (same).

Thus, the final paragraph of § 2255 incorporates

§ 2244(b)(3)(C), which provides that a petitioner must make a "prima facie showing" that his or her motion satisfies § 2255's requirements for second or successive motions in order to obtain permission from a court of appeals to file such a motion. "By 'prima facie showing' we understand . . . simply a sufficient showing of possible merit to warrant a fuller exploration by the district court." Bennett, 119 F.3d at 469. Therefore, if from the application and its supporting documents, "it appears reasonably likely that the application satisfies the stringent requirements for the filing of a second or successive petition," the application shall be granted. See id. at 469-70. Under this standard, Reyes received permission from a previous panel of this court to file his second § 2255 motion.

*2. Section 2244(b)(4) Has Been Incorporated into Section 2255*

We now examine whether § 2244(b)(4)[15] has been incorporated into § 2255. Similar to § 2244(b)(3)(C), only two of our sister circuits have addressed the § 2244(b)(4) incorporation issue. Both the Seventh and Ninth Circuits view § 2255 as incorporating § 2244(b)(4). As we explain below, we agree with the approach and reasoning of these circuits and hold that 28 U.S.C. § 2244(b)(4) has also been incorporated into 28 U.S.C. § 2255.

The Seventh Circuit has noted that it would be appropriate for a district court to assess a second or successive § 2255

---

[15]   See supra note 11.

motion under § 2244(b)(4).  Writing for the panel, then Chief Judge Posner explained that a petitioner "must get through two gates before the merits of the motion can be considered." Bennett v. United States, 119 F.3d 468, 470 (7th Cir. 1997). This is so because the court of appeals utilizes a "prima facie showing" standard to assess whether to grant a petitioner permission to file a second or successive § 2255 motion (the first "gate").  See supra Part II.A.1 (holding that the prima facie standard of § 2244(b)(3)(C) has been incorporated into § 2255 for successive motions); see also Bennett, 119 F.3d at 469 (explaining that a court of appeals makes rulings on such applications under tight deadlines and with limited information). Therefore, the "grant [by a court of appeals to file a second or successive motion] is, . . . it is important to note, tentative in the following sense: the district court must dismiss the motion that we have allowed the applicant to file, without reaching the merits of the motion, if the court finds that the movant has not satisfied the requirements for the filing of such a motion."  Id. at 470.  The district court then is the second "gate" through which the petitioner must pass before the merits of his or her motion are heard.

Agreeing with this framework, the Ninth Circuit followed suit and held that "section 2255 incorporates 28 U.S.C. § 2244(b)(4)."  United States v. Villa-Gonzalez, 208 F.3d 1160, 1164 (9th Cir. 2000) (concluding that the petitioner "must make

12

more than another prima facie showing" before the district court).  The court further advised that the district court must conduct a "thorough" review to determine if the motion "conclusively" demonstrates that it does not meet AEDPA's second or successive motion requirements.  See id. at 1165.

Therefore, we find that 28 U.S.C. § 2244(b)(4) has also been incorporated into 28 U.S.C. § 2255.  As such, the previous panel's grant of permission to Reyes to file a second § 2255 motion did not preclude the Southern District from conducting its own threshold inquiry; in fact, the Southern District was obligated to do so.  The Southern District thus acted properly in analyzing whether Reyes had satisfied the requirements of successive motions under § 2255.[16]  We next examine whether the Southern District's conclusion that Reyes's motion failed to meet those requirements was in error.

B. Reyes's Bailey Claim Is Not Cognizable Under

A Successive Section 2255 Motion

---

[16]  In concluding that the Southern District was the appropriate venue, the Eastern District relied on the grant of permission by a previous panel of this court for Reyes to file a second § 2255 motion and on dicta in United States v. Rocha, 109 F.3d 225, 229 (5th Cir. 1997).  See supra Part II.  We do not agree with either basis for the Eastern District's conclusion. We first note that the previous grant was not dispositive; as discussed above, the grant was based on only a prima facie showing, and the Southern District was obligated to conduct its own threshold inquiry before reaching the merits of the motion. Second, in Rocha the petitioner was appealing the denial of his first § 2255 motion and, as the Second Circuit has noted, Rocha "did not expressly consider . . . AEDPA's requirement" for successive motions.  See Triestman, 124 F.3d at 370 n.9.

13

A district court's denial of a second § 2255 motion on the ground that the motion fails to meet AEDPA's conditions is a legal conclusion, which we review under a de novo standard of review. See United States v. Faubion, 19 F.3d 226, 228 (5th Cir. 1994) ("In challenges to district court decisions under 28 U.S.C. § 2255, we measure . . . questions of law [against the] de novo [standard].").

Under § 2255, a second or successive motion must demonstrate either: "(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255 (2000). In this case, because Reyes has not put forth any newly discovered evidence and because he is relying on Bailey v. United States, 516 U.S. 137 (1995), we are presented with the question whether Bailey fits within the new rule of constitutional law prong of § 2255. We find that it does not.

The Supreme Court in Bailey conducted a routine statutory analysis. See 516 U.S. at 144 ("We conclude that the language, context, and history of § 924(c)(1) indicate that the Government must show active employment of the firearm."). In Bousley v. United States, the Court reiterated the statutory nature of its

Bailey case.  See 523 U.S. 614, 620 (1998) (stating that Bailey "[decided] the meaning of a criminal statute enacted by Congress").  This statement affirmed our earlier holding to the same effect in United States v. McPhail, in which we held that Bailey "is a substantive, non-constitutional decision concerning the reach of a federal statute."  112 F.3d 197, 199 (5th Cir. 1997) (emphasis added).  As such, the Bailey decision does not put forth a "new rule of constitutional law."  See, e.g., Triestman, 124 F.3d at 372 (stating that petitioner may not raise his Bailey claim in a second or successive § 2255 motion because Bailey was not a constitutional case) (collecting cases from other circuits); United States v. Lorentsen, 106 F.3d 278, 279 (9th Cir. 1997) (stating that "Bailey announced only a new statutory interpretation, not a new rule of constitutional law" and thus was not a basis for a successive § 2255 motion).[17]

Therefore, the Southern District did not err in determining that Reyes's Bailey claim was not cognizable in a second § 2255 motion.

## C. Reyes's Bailey Claim May Be Considered Under Section 2241

We now decide whether Reyes may utilize the "savings clause"

---

[17]  We have also previously noted that Bailey claims do not fit within the rubric of successive § 2255 motions.  Cf. Hooker v. Sivley, 187 F.3d 680, 681 (5th Cir. 1999) (noting that the petitioner was denied permission to file a second or successive motion "because his [Bailey] claim did not involve . . . a new rule of constitutional law"); In re Tolliver, 97 F.3d 89, 90 (5th Cir. 1996) (denying petitioner's motion for authorization to file a successive § 2255 motion based on Bailey).

15

of § 2255 in the circumstances presented here.

### 1. Savings Clause Test

28 U.S.C. § 2241 is typically used to challenge the manner in which a sentence is executed.  See Warren v. Miles, 230 F.3d 688, 694 (5th Cir. 2000).  28 U.S.C. § 2255, on the other hand, is the primary means under which a federal prisoner may collaterally attack the legality of his conviction or sentence.[18] See Cox v. Warden, Fed. Detention Ctr., 911 F.2d 1111, 1113 (5th Cir. 1990) ("Relief under [§ 2255] is warranted for any error that 'occurred at or prior to sentencing.'" (quoting United States v. Flores, 616 F.2d 840, 842 (5th Cir.1980))).

---

[18]  "[P]ractical concerns led Congress, in 1948, to enact 28 U.S.C. § 2255, and to make it the main provision governing collateral attacks on convictions by federal prisoners." Henderson v. INS, 157 F.3d 106, 124 (2d Cir. 1998); see also United States v. Hayman, 342 U.S. 205, 212-19 (1952) (explaining § 2255's legislative history).  Section 2255 "channels collateral attacks by federal prisoners to the sentencing court (rather than to the court in the district of confinement [as § 2241 requires]) so that they can be addressed more efficiently."  Triestman, 124 F.3d at 373.

Section 2255 thus was not intended to limit the rights of federal prisoners to collaterally attack their convictions and sentences. See Davis v. United States, 417 U.S. 333, 343 (1974) (noting that "§ 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus"); Hayman, 342 U.S. at 219 ("Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners' rights of collateral attack upon their convictions.").

In re Jones, 226 F.3d 328, 332-33 (4th Cir. 2000) (parallel citations omitted); see also Kinder v. Purdy, 222 F.3d 209, 214 (5th Cir. 2000) ("[T]he scope of the § 2255 remedy is no different from the scope of the § 2241 remedy."), cert. denied, 121 S. Ct. 894 (2001).

However, § 2241 may be utilized by a federal prisoner to challenge the legality of his or her conviction or sentence if he or she can satisfy the mandates of the so-called § 2255 "savings clause":

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that <u>the remedy by motion is inadequate or ineffective to test the legality of his detention</u>.

28 U.S.C. § 2255 (2000) (emphasis added). The inadequacy or inefficacy of the remedy will therefore permit a federal prisoner to file a writ of habeas corpus under provisions such as § 2241.[19]

"The petitioner bears the burden of demonstrating that the section 2255 remedy is inadequate or ineffective." <u>Pack v. Yusuff</u>, 218 F.3d 448, 452 (5th Cir. 2000). Our jurisprudence regarding § 2255's savings clause makes clear that § 2241 is not

---

[19] The savings clause and habeas corpus writs (e.g., § 2241) exist in a delicate balance. Section 2255 is the primary collateral relief mechanism for federal prisoners, and the savings clause cannot create a detour around § 2255 such that § 2255 is rendered a nullity. On the other hand, if Congress had not included the savings clause in § 2255, it is arguable that a problem would exist under the Suspension Clause. <u>See</u> U.S. CONST. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."); <u>cf.</u> <u>Swain v. Pressley</u>, 430 U.S. 372, 381 (1977) (stating that the "substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus" in contravention of Article 1, § 9 of the Constitution).

17

a mere substitute for § 2255 and that the inadequacy or inefficacy requirement is stringent. See, e.g., Kinder v. Purdy, 222 F.3d 209, 214 (5th Cir. 2000) ("Section 2241 is simply not available to prisoners as a means of challenging a result they previously obtained from a court considering their petition for habeas relief."), cert. denied, 121 S. Ct. 894 (2001); Pack, 218 F.3d at 453 ("[M]erely failing to succeed in a section 2255 motion does not establish the inadequacy or ineffectiveness of the section 2255 remedy."); Id. at 452-53 (collecting cases); Tolliver v. Dobre, 211 F.3d 876, 878 (5th Cir. 2000) ("[A] prior unsuccessful § 2255 motion, or the inability to meet AEDPA's 'second or successive' requirement, does not make § 2255 inadequate or ineffective."); McGhee v. Hanberry, 604 F.2d 9, 10 (5th Cir. 1979). Our sister circuits have also uniformly recognized the limited exception created by the savings clause. See, e.g., Caravalho v. Pugh, 177 F.3d 1177, 1178 (10th Cir. 1999) (stating that statute of limitations bar to filing a second § 2255 motion, without more, is insufficient to demonstrate inadequacy or inefficacy); Triestman, 124 F.3d at 376 (stating that § 2255's substantive and procedural barriers, without more, do not establish inadequacy or inefficacy).

To date, the Supreme Court has not provided much guidance as to the factors that must be satisfied for a petitioner to file under habeas corpus provisions such as § 2241. In United States v. Hayman, the Court simply observed that habeas corpus writs are

18

available when § 2255 is inadequate or ineffective. See 342 U.S. 205, 223 (1952); see also Swain v. Pressley, 430 U.S. 372, 381 (1977) (stating that the "substitution of a collateral remedy which is neither inadequate nor ineffective to test the legality of a person's detention does not constitute a suspension of the writ of habeas corpus" in contravention of Article 1, § 9 of the Constitution).

However, a number of our sister circuits have formulated tests for the savings clause. Some have addressed the issue in the context of Bailey claims. See In re Jones, 226 F.3d 328 (4th Cir. 2000)[20]; In re Davenport, 147 F.3d 605 (7th Cir. 1998)[21]; Triestman, 124 F.3d 361[22]; In re Hanserd, 123 F.3d 922 (6th Cir.

---

[20] "§ 2255 is inadequate and ineffective to test the legality of a conviction when: (1) at the time of the conviction, settled law of the circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law." Jones, 226 F.3d at 333-34.

[21] "A federal prisoner should be permitted to seek habeas corpus relief only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion." Davenport, 147 F.3d at 611. This is subject to three qualifications: (1) "[T]he change of law has to have been made retroactive by the Supreme Court." Id. (2) "[I]t must be a change that eludes the permission in section 2255 for successive motions." Id. (3) "'[C]hange in law' is not to be equated to a difference between the law in the circuit in which the prisoner was sentenced and the law in the circuit in which he was incarcerated." Id. at 612.

[22] See infra note 28.

19

1997)[23]; In re Dorsainvil, 119 F.3d 245 (3d Cir. 1997).[24]  Other circuits have discussed the savings clause in the context of various non-Bailey claims.  See Sustache-Rivera v. United States, 221 F.3d 8 (1st Cir. 2000) (Jones claim, 18 U.S.C. § 2119)[25]; United States v. Lurie, 207 F.3d 1075 (8th Cir. 2000) (claim under 18 U.S.C. § 1623, false declaration in bankruptcy proceeding)[26]; Wofford v. Scott, 177 F.3d 1236 (11th Cir. 1999) (various sentencing claims).[27]

---

[23]  "A [federal] prisoner barred by res judicata would seem as a consequence to have an 'inadequate or ineffective' remedy under § 2255 and thus be entitled to proceed in federal habeas corpus."  Hanserd, 123 F.3d at 930 (alteration in original) (internal quotations omitted) (quoting in parenthetical Sanders v. United States, 373 U.S. 1, 14-15 (1963)).

[24]  Section 2255's savings clause is available for "a prisoner who had no earlier opportunity to challenge his conviction for a crime that an intervening change in substantive law may negate."  Dorsainvil, 119 F.3d at 251.

[25]  The First Circuit panel did not resolve the meaning of the savings clause in the particular case, but noted that the "savings clause has to be resorted to for . . . statutory [claims] because Congress restricted second or successive petitions to constitutional claims."  Sustache-Rivera, 221 F.3d at 16.

[26]  The Eighth Circuit also declined to answer the broader question of how a petitioner would gain access to the savings clause, but stated that "more is required than demonstrating that there is a procedural barrier to bringing a § 2255 motion."  Lurie, 207 F.3d at 1077 (citing Davenport, 147 F.3d at 608, as an example).

[27]  "The savings clause of § 2255 applies to a claim when: 1) that claim is based upon a retroactively applicable Supreme Court decision; 2) the holding of that Supreme Court decision establishes that the prisoner was convicted of a nonexistent offense; and, 3) circuit law squarely foreclosed such a claim at the time it otherwise should have been raised in the petitioner's

20

The standards that these courts have articulated for the savings clause may not be framed in identical terms, but the following basic features are evident in most formulations: actual innocence and retroactivity.[28]

Courts have framed the actual innocence factor differently, but the core idea is that the petitioner may have been imprisoned for conduct that was not prohibited by law.  Such a situation would likely surface in a case that relies on a Supreme Court decision interpreting the reach of a federal statute due to the following rationale:  Section 2255 is the primary method by which a federal prisoner may collaterally attack a conviction or sentence.  See Tolliver v. Dobre, 211 F.3d 876, 877 (5th Cir.

_____

trial, appeal, or first § 2255 motion."  Wofford, 177 F.3d at 1244.

[28]  The Second Circuit devised its savings clause test based on whether failure to permit a remedy would "raise serious constitutional questions."  Triestman, 124 F.3d at 377.  Whenever a judge believes "justice would seem to demand a forum for the prisoner's claim in so pressing a fashion as to cast doubt on the constitutionality of the law that would bar the § 2255 petition," the prisoner would be permitted access to habeas corpus writs. See id. at 378.  Although the court did state that such cases would be rare, its formulation has been criticized as too indefinite for practical enforcement.  See Davenport, 147 F.3d at 611; Wofford, 177 F.3d at 1243 (Eleventh Circuit echoing the Seventh Circuit's criticism in Davenport).  Notwithstanding the fact that the Second Circuit's test does essentially speak to the principles embodied in the other circuits' tests (i.e., as § 2255 is a non-habeas collateral remedy, a petitioner's inability to prove actual innocence would likely run afoul of the Constitution, see supra note 19), its composition creates the appearance of a standardless test with no limiting principles. We thus find the criticism of Triestman expressed in Wofford and Davenport to be well taken.

21

2000).  Thus, a petitioner's first recourse on collateral review is the initial § 2255 motion (which can be filed, <u>inter alia</u>, on grounds that the sentence violated the Constitution or federal laws).  Similarly, if a petitioner has already filed a § 2255 motion, his or her second recourse would be a successive § 2255 motion.  Section 2255 permits second or successive motions only if the motion contains:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255 (2000).

And, as subsection (2) speaks only to intervening Supreme Court decisions based on constitutional grounds, the provision does not provide any avenue through which a petitioner could rely on an intervening Court decision based on the substantive reach of a federal statute.  See <u>Lorentsen v. Hood</u>, 223 F.3d 950, 953 (9th Cir. 2000) ("Congress has determined that second or successive [§ 2255] motions may not contain statutory claims."); <u>Sustache-Rivera</u>, 221 F.3d at 16 ("The savings clause has most often been used as a vehicle to present an argument that, under a Supreme Court decision overruling the circuit courts as to the meaning of a statute, a prisoner is not guilty . . . . The savings clause has to be resorted to for [statutory claims]

22

because Congress restricted second or successive petitions to constitutional claims." (internal citations omitted)).

"[D]ecisions of [the Supreme Court] holding that a substantive federal criminal statute does not reach certain conduct . . . necessarily carry a significant risk that a defendant stands convicted of 'an act that the law does not make criminal.'" Bousley v. United States, 523 U.S. 614, 620 (1998) (quoting Davis v. United States, 417 U.S. 333, 346 (1974)); see also United States v. McKie, 73 F.3d 1149, 1151 (D.C. Cir. 1996) ("[A] court's interpretation of a substantive criminal statute generally declares what the statute meant from the date of its enactment.").

To capture the idea that the incarceration of one whose conduct is not criminal "'inherently results in a complete miscarriage of justice,'" Davis v. United States, 417 U.S. 333, 346 (1974), most circuits have included an actual innocence component in their savings clause tests. See, e.g., Jones, 226 F.3d at 334 ("the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal"); Wofford, 177 F.3d at 1244 ("the holding of [the] Supreme Court establishes the petitioner was convicted for a nonexistent offense"); Davenport, 147 F.3d at 611 ("so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense"); Dorsainvil, 119 F.3d at 251 ("prisoner who had no earlier opportunity to challenge his

23

conviction for a crime that an intervening change in substantive law may negate"). The actual innocence element has also been foreshadowed in our own savings clause jurisprudence. See, e.g., Kinder, 222 F.3d at 213 (noting with approval that "[w]here the petitioner's case has been viewed [in other circuits] as falling within the savings clause, it was in part because the petitioner arguably was convicted for a nonexistent offense").

Second, the decision upon which the petitioner is relying must be retroactively applicable on collateral review. See Wofford, 177 F.3d at 1244 ("claim is based on a retroactively applicable Supreme Court decision"); Dorsainvil, 119 F.3d at 251 ("government concedes that such a change should be applied retroactively").

We therefore hold that the savings clause of § 2255 applies to a claim (i) that is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted of a nonexistent offense and (ii) that was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first § 2255 motion. Under these circumstances, it can fairly be said, in the language of the savings clause, that "the remedy by [a successive § 2255] motion is inadequate or ineffective to test the legality of [the petitioner's] detention." Of course, this test will operate in the context of our existing jurisprudence regarding what is not sufficient to obtain access to the savings clause.

24

See, e.g., Pack, 218 F.3d at 452-53 (providing examples of such circumstances from caselaw).

*2. Application of Savings Clause Test to Reyes's Claim*

First, Reyes is alleging that, in light of Bailey, he was not guilty of violating 18 U.S.C. § 924(c)(1).  Because the Supreme Court made clear that "use" in § 924(c)(1) meant "an active employment of the firearm by the defendant," Bailey, 516 U.S. at 143, Reyes argues that the facts of his case would not support his conviction.[29]  Because his claim is that he has been imprisoned for non-criminal conduct, as acknowledged by Bailey, he meets the actual innocence prong of our savings clause test.

Second, in order to make a determination as to Bailey's retroactivity, we must first make a threshold inquiry as to the type of decision issued by the Supreme Court.  This identification is critical because it results in different retroactivity analyses.  While courts have not been entirely consistent in their terminology and differentiations, they have generally recognized a distinction between new constitutional rules and the Supreme Court's interpretation of a statute.[30]

---

[29]  Police officers had found one firearm under Reyes's bedroll and another one in the kitchen pantry.  The government conceded in its Response and Motion to Dismiss Reyes-Requena's § 2255 Motion in the Southern District, that "under . . . [Bailey], the facts of this case would not be sufficient to sustain a conviction" based on the "use" prong of § 924(c)(1).

[30]  The D.C. Circuit, in a case relied upon by our circuit in United States v. McPhail, 112 F.3d 197, 199 (5th Cir. 1997), aptly summarized the rationale underlying this distinction:

25

This distinction, arising from both the text of AEDPA[31] and Supreme Court decisions, has been recognized and applied by our circuit. In <u>Bousley v. United States</u>, 523 U.S. 614 (1998), the Supreme Court held that the retroactivity analysis of <u>Teague v. Lane</u>, 489 U.S. 288 (1989), did not bar petitioner's <u>Bailey</u> claim on collateral review: "[B]ecause <u>Teague</u> by its terms applies only to procedural rules, we think it is inapplicable to a situation in which this Court decides the meaning of a criminal statute enacted by Congress." <u>Bousley</u>, 523 U.S. at 620;[32] <u>see also</u> <u>Robinson v. United States</u>, 196 F.3d 748, 752 (7th Cir. 1999) (recognizing that the <u>Bousley</u> Court made clear that <u>Teague</u>'s retroactivity bar applies only to new rules of criminal procedure and not to changes in substantive law); <u>United States v. Ryan</u>, 227 F.3d 1058, 1062-63 (8th Cir. 2000) (citing <u>Bousley</u> for its holding that <u>Jones v. United States</u>, 529 U.S. 848 (2000),

---

"Because the principle underlying <u>Teague</u>'s non-retroactivity doctrine is to apply the law in effect at the time a prisoner's conviction became final and because a court's interpretation of a substantive criminal statute generally declares what the statute meant from the date of its enactment, not from the date of the decision, the rationale of <u>Teague</u> does not preclude retroactive application of [statutory decisions]." <u>United States v. McKie</u>, 73 F.3d 1149, 1151 (D.C. Cir. 1996).

[31] AEDPA differentiates among types of rights or rules. <u>See, e.g.</u>, 28 U.S.C. § 2244(b)(2)(A), § 2254(e)(2)(A)(i), § 2255 ¶8(3) ("a new rule of constitutional law"); § 2244(d)(1)(C) ("constitutional right"); § 2255 ¶6(3) ("right").

[32] In light of <u>Bousley</u>, it is likely that the one circuit that has held <u>Teague</u> applicable to statutory decisions, <u>United States v. Martinez</u>, 139 F.3d 412, 417 (4th Cir. 1998) (pre-<u>Bousley</u> decision), reached an incorrect result.

26

involved the substantive reach of a federal statute and, thus, was not subject to Teague, making it retroactively applicable on collateral review).

Bousley's holding that Bailey is retroactively applicable on collateral review validates our decision in McPhail that Bailey "does not implicate the retroactivity analysis set forth in Teague v. Lane [and therefore] . . . applies retroactively to cases on collateral review." McPhail, 112 F.3d at 199 (citing, inter alia, Davis v. United States, 417 U.S. 333, 341-47 (1974)) (internal citations omitted); see also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) ("Teague stands for the proposition that new constitutional rules of criminal procedure will not be announced or applied on collateral review." (emphasis added)); United States v. Shunk, 113 F.3d 31, 35 (5th Cir. 1997) (rejecting petitioners' argument that United States v. Gaudin, 515 U.S. 506 (1995), created a rule of substantive criminal law, noting that the Supreme Court stated it was creating a procedural rule, and applying Teague to determine retroactivity); supra note 17 and accompanying text.[33]

---

[33] The great majority of our sister circuits that have considered this issue in pre-Bousley decisions are in accord with Bousley. See, e.g., United States v. McKie, 73 F.3d 1149, 1153 (D.C. Cir. 1996) (providing detailed analysis and relied upon by this court in McPhail); United States v. Dashney, 52 F.3d 298, 299 (10th Cir. 1995) (discussing policy rationale and relied upon by this court in McPhail); see also Bilzerian v. United States, 127 F.3d 237, 240 (2d Cir. 1997) (contrasting new rules of constitutional criminal procedure from rules of criminal substantive law); United States v. Barnhardt, 93 F.3d 706, 709

27

Thus, Reyes meets our stringent savings clause test and is permitted to file his <u>Bailey</u> claim under § 2241 in the district of his incarceration, the Eastern District, which must then rule on this merits of his petition.[34]  <u>See, e.g.</u>, <u>Jones</u>, 226 F.3d at 333-34 (stating that § 2255 was inadequate to test the legality of petitioner's conviction in light of <u>Bailey</u>, and thus, he may file a § 2241 petition); <u>Davenport</u>, 147 F.3d at 611-12 (permitting petitioner to file § 2241 petition to raise his <u>Bailey</u> claim); <u>Triestman</u>, 124 F.3d at 380 (stating that petitioner is entitled to raise his <u>Bailey</u> claim in a petition for a writ of habeas corpus); <u>Hanserd</u>, 123 F.3d at 930 (finding that petitioner may "raise his <u>Bailey</u> claim under § 2241"); <u>Dorsainvil</u>, 119 F.3d at 251 (same).

### III. CONCLUSION

We briefly summarize our holdings.  First, 28 U.S.C. § 2255 incorporates § 2244(b)(3)C) and § 2244(b)(4).  As such, the Southern District acted properly in conducting its own threshold

---

(10th Cir. 1996) (relying upon <u>Dashney</u> to find <u>Bailey</u> retroactively applicable on collateral review); <u>United States v. McClelland</u>, 941 F.2d 999, 1001 (9th Cir. 1991).  <u>But see</u> <u>supra</u> note 32.

[34]  We also note that this holding comports with our established jurisprudence regarding what will <u>not</u> suffice to gain access to the savings clause.  <u>See</u> <u>supra</u> Part II.C.1.  Reyes is not claiming a need to access § 2241 merely because, for example, the statute of limitations expired on his § 2255 motion or because he wishes to use a new rule of constitutional law that has not been made retroactive on collateral review.

inquiry as to whether Reyes's second § 2255 motion met AEDPA's requirement for successive motions.  Second, we agree with the Southern District that Reyes's <u>Bailey</u> claim is not cognizable in a second or successive § 2255 motion.  Finally, we formulated the criteria which must be met for a federal prisoner to access the savings clause of 28 U.S.C. § 2255.  Because Reyes's <u>Bailey</u> claim meets those requirements, his claim may be considered under the 28 U.S.C. § 2241 writ of habeas corpus.  As a § 2241 petition may be filed only in the district of the prisoner's incarceration, the Southern District acted properly in transferring Reyes's motion to the Eastern District.  The Eastern District must now rule on the merits of Reyes's § 2241 petition.

For the above-stated reasons, we REVERSE the judgment of the district court and REMAND for further proceedings consistent with this opinion.