# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-60181

HENRY EARL MILLER,

Petitioner - Appellant

v.

S. FISHER, Warden of Federal Correctional Complex Yazoo City (Medium),

Respondent - Appellee

United States Court of Appeals
Fifth Circuit

**FILED**

August 3, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Mississippi
USDC 3:14-CV-354

Before STEWART, Chief Judge, and PRADO and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Proceeding without counsel, Petitioner-Appellant Henry Miller appeals the district court's dismissal of his 28 U.S.C. § 2241 petition. He has also filed motions for appointment of appellate counsel, for summary reversal, to file an out-of-time reply to the Government's response to his motion for summary reversal, to strike an argument in the Government's brief, and for clarification

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60181

on the issue of subject matter jurisdiction.  We AFFIRM the district court's dismissal of Henry Miller's petition and DENY as moot Henry Miller's appellate motions.

## BACKGROUND

Miller is currently incarcerated at the Federal Correctional Complex in Yazoo City, Mississippi.  However, the convictions giving rise to this appeal stem from Miller's role in two South Carolina bank robberies.  We gather the facts underlying these robberies from the factual basis proffered at Miller's guilty plea hearing and Miller's Pre-Sentence Investigation Report ("PSR").

At some point prior to August 2003, Henry Miller and Derrick Miller began to plan a bank robbery and targeted a branch of the National Bank of South Carolina ("NBSC") in Spartanburg, South Carolina.  For over a month, both Millers cased the NBSC from the outside, and, on one occasion, Henry Miller entered the bank under the pretense of opening an account in order to make inside observations.  On August 5, the two sought to make good on their planning.  Derrick Miller showed Henry Miller a gun that he planned to use during the bank robbery to occur later that day.[1]  Fearing that Derrick Miller might injure someone, Henry Miller secretly removed the ammunition from the gun, but continued onward with the plan.  The Millers then took Henry Miller's car to an apartment complex near the NBSC and approached the bank on foot.  They eventually entered the bank and ordered all employees to the floor.  Derrick Miller stood near the teller counter and held bank employees at

---

[1] One particular paragraph from Henry Miller's PSR warrants reproduction in full: "On August 5, 2003, Derrick Earl Miller showed **Henry Earl Miller** a gun that he planned to use during the bank robbery that date.  According to **Henry Miller**, when Derrick Miller walked out of the room, **Henry Miller** removed the ammunition from the weapon without Derrick Miller's knowledge.  According to **Henry Miller**, he believed Derrick Miller was unpredictable, and he removed the ammunition to ensure no one would be injured during the robbery" (emphasis in original).  At sentencing, Henry Miller did not object to any portion of the PSR.

gunpoint while Henry Miller went behind the counter and began placing money in a duffle bag.[2] The Millers then prepared to exit the bank and again ordered all employees to stay down, this time warning them not to move for ten minutes because "someone was watching from outside." As they fled from the bank to the nearby-parked car, a dye pack included with the money activated inside the duffel bag. The Millers then took Henry Miller's car to Greensboro, North Carolina, where they rented a hotel room under a third party's name; counted the dye-stained money; and used acetone to remove the dye. The bank reported a loss in excess of $30,000 from this robbery.

On December 23, Henry Miller and Derrick Miller robbed a Capital Bank in Greenville, South Carolina, under similar circumstances. Wearing ski masks and waving handguns, both Millers entered the bank and said, "Get the f*** down on the g** damn floor now." Derrick Miller again held the employees at gunpoint while Henry Miller again went behind the teller counter and took money from the teller drawer and the vault, this time ordering employees not to give him any dye packs. The Millers then exited the bank and ran to a nearby-parked car. The bank reported a loss of approximately $65,000 from this robbery.

For his role in the two robberies, Henry Miller eventually pleaded guilty in the District of South Carolina to two counts of aiding and abetting armed bank robbery in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2, and two counts of aiding and abetting the use or carrying of a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. The court later sentenced him to a total term of 300 months' imprisonment. The Fourth

---

[2] According to Henry Miller's PSR, "two of the three employees interviewed by United States Probation advised both [Derrick Miller and Henry Miller] were in possession of a firearm during the [August 2003] robbery."

No. 15-60181

Circuit dismissed as untimely his direct appeal. *See United States v. Miller*, 312 F. App'x 511 (4th Cir. 2008) (per curiam).

Henry Miller has since pursued post-conviction relief in multiple venues. *See, e.g.*, *In re Miller*, No. 15-152 (4th Cir. Mar. 31, 2015) (denying authorization to file a successive § 2255 motion based on *Rosemond v. United States*, 134 S. Ct. 1240 (2014)); *Miller v. United States*, No. 6:04-cr-00022-GRA-3, 2014 WL 1232205, at *1 (D.S.C. Mar. 24, 2014) (treating a second motion for reconsideration as a successive § 2255 motion and dismissing for lack of jurisdiction); *United States v. Miller*, 318 F. App'x 200, 201 (4th Cir. 2009) (per curiam) (affirming the denial of an initial § 2255 motion and treating a first motion for reconsideration as an unauthorized successive filing); *United States v. Miller*, Nos. 6:04-CR-022-HFF, 6:06-CV-548-HFF, 2007 WL 2684844, at *2–3, *7 (D.S.C. Sept. 7, 2007) (re-characterizing a handwritten letter as an initial § 2255 motion and denying relief). In April 2014, he filed the instant § 2241 petition in the Southern District of Mississippi, relying on *Rosemond* to argue that he is actually innocent of aiding and abetting the earliest-in-time § 924(c)(1)(A) offense because he lacked advance knowledge that Derrick Miller would use or carry a firearm during the August 2003 robbery. Specifically, Henry Miller argued that his claim was properly brought via § 2241 and the savings clause in 28 U.S.C. § 2255(e) because *Rosemond* was retroactively applicable to cases on collateral review; his claim was previously foreclosed by Fourth Circuit precedent; and *Rosemond* established that he may have been convicted of a nonexistent offense.

The magistrate judge issued a Report and Recommendation, concluding that the petition should be dismissed because, even if *Rosemond* was retroactively applicable, record evidence satisfied *Rosemond*'s advance knowledge requirement. Miller objected and requested an evidentiary hearing. Without holding the requested hearing, the district court adopted the

No. 15-60181

magistrate judge's findings and conclusions and dismissed Miller's petition for lack of jurisdiction. Miller timely appealed, and the district court granted him leave to proceed in forma pauperis.

## DISCUSSION

Miller raises a host of issues on appeal and has filed numerous pleadings in support of his assertions. Principally, Miller argues: (1) that the district court erred in dismissing his § 2241 petition because his claim was properly brought via § 2255's savings clause and *Rosemond*, and (2) that the court erred in failing to hold the requested evidentiary hearing before dismissing his petition.[3] We address each argument in turn.

### A.

We begin with Miller's argument that his claim was properly brought under § 2255's savings clause. Generally, a federal prisoner who seeks to collaterally challenge the legality of his conviction or sentence must file a § 2255 motion in the sentencing court. *See, e.g.*, *Reyes-Requena v. United States*, 243 F.3d 893, 895 n.3 (5th Cir. 2001); *see also Padilla v. United States*, 416 F.3d 424, 425–26 (5th Cir. 2005) (per curiam). However, § 2255's savings clause allows a federal prisoner to attack his conviction or sentence by filing a § 2241 petition where he is incarcerated if he can show that the remedies provided under § 2255 are "inadequate or ineffective to test the legality of his detention." 18 U.S.C. § 2255(e); *see also Reyes-Requena*, 243 F.3d at 895 n.3, 901. To show that his § 2255 remedies are inadequate or ineffective, a prisoner must make "a claim (i) that is based on a retroactively applicable Supreme Court decision which establishes that the petitioner may have been convicted

---

[3] Miller also argues that the district court erroneously concluded that his decision to plead guilty procedurally barred him from receiving relief under *Rosemond* and impermissibly shifted the burden of proof by requiring him to prove that he lacked the advance knowledge required by *Rosemond*. Both of these arguments are wholly unsupported by the record and do not warrant discussion.

of a nonexistent offense and (ii) that was foreclosed by circuit law at the time when the claim should have been raised in the petitioner's trial, appeal, or first § 2255 motion." *Reyes-Requena*, 243 F.3d at 904. The savings clause is "only a limited exception," and Miller's burden to establish "the inadequacy of the § 2255 remedy is a stringent one." *Christopher v. Miles*, 342 F.3d 378, 382 (5th Cir. 2003) (internal quotation marks and citation omitted).

As has previously been the case, here we need not discuss any issues of retroactivity or unavailability because Henry Miller has failed to show that he was convicted of a nonexistent offense. *See, e.g.*, *Freeman v. Werlich*, No. 15-30734, ___ F. App'x ___, ___, 2016 WL 2961793, at *2 (5th Cir. May 20, 2016) ("Here, we need not decide the issues of retroactivity and unavailability because there is no possibility that the jury convicted [Defendant] of a nonexistent offense."). In *Rosemond*, the Supreme Court held that an accomplice defendant "has the intent needed to aid and abet a § 924(c) violation when he knows that one of his confederates will carry a gun." 134 S. Ct. at 1249. This requires the Government to prove that the accomplice had "advance knowledge" of a firearm, *i.e.*, knowledge at a time when the accomplice could reasonably elect to opt out or walk away. *See id.* at 1249–50. However, as the *Rosemond* Court carefully explained, "if a defendant continues to participate in a crime after a gun was displayed or used by a confederate, the jury can permissibly infer from his failure to object or withdraw that he had such knowledge." *Id.* at 1250 n.9.

The record evidence reflects that, before the August 2003 robbery, Derrick Miller showed Henry Miller the firearm he planned to use to consummate the offense; indeed, by Henry Miller's own admission to probation, he secretly removed the ammunition from the firearm before the robbery because he believed Derrick Miller might injure someone. This alone shows that Henry Miller unmistakably knew beforehand that Derrick Miller

would "carry a gun" during the NBSC robbery. *Id.* at 1248. Furthermore, rather than opt out or withdraw based on this knowledge, Henry Miller proceeded to the bank with Derrick Miller; went behind the counter and gathered money after Derrick Miller began holding bank employees at gunpoint; prepared to exit the bank with Derrick Miller by ordering employees to remain on the floor for ten minutes or face injury; and fled the state and rented a hotel room with Derrick Miller, where he helped count and clean the dye-stained proceeds from the robbery. This is sufficient to satisfy *Rosemond*'s knowledge requirement.[4] *Id.* at 1249–50 & n.9.

Accordingly, even after *Rosemond*, Henry Miller fails to show that he was convicted of a nonexistent offense on the § 924(c)(1)(A) count related to the August 2003 armed bank robbery. Thus, he fails to meet the requirements of § 2255's savings clause, and the district court correctly dismissed the petition.

## B.

Miller next argues that the district court erred in dismissing his petition without first holding an evidentiary hearing based on his assertion that he informed his public defender "that he had not known that his codefendant would possess or use a gun during the commission of the first bank robbery that occurred on August 5, 2003." We have explained that "'where petitioner's

---

[4] Henry Miller fails to proffer evidence that he "would have 'increase[d] the risk of gun violence' by aborting the robbery once the firearm was displayed." *Rainwater v. Werlich*, No. 14-31039, ___ F. App'x ___, ___, 2016 WL 2640483, at *2 (5th Cir. May 9, 2016) (per curiam) (alteration in original) (quoting *Rosemond*, 134 S. Ct. at 1251). His conclusory assertions in his reply brief—where he notably fails to acknowledge the evidence in his PSR—are not evidence. Rather, as the court below noted, the only evidence tendered in support of the petition is Henry Miller's own affidavit testimony that he was "surprised" when Derrick Miller pulled out a firearm during the August 2003 robbery. Of course, record evidence establishes that Henry Miller can hardly claim surprise—Derrick Miller showed him the gun before the robbery and Henry Miller secretly removed the ammunition from it. In any event, mere surprise does not establish that withdrawing would have "increase[d] the risk of gun violence—to [Henry Miller] himself, other participants, or bystanders." *Rosemond*, 134 S. Ct. at 1251.

allegations, if proven would entitle him to relief, he is entitled to an evidentiary hearing and an opportunity to prove the truth of the matters asserted' unless his claims 'are fully refuted by the record and files.'" *United States v. Batamula*, No. 12-20630, ___ F. 3d ___, ___, 2016 WL 2342943, at *5 (5th Cir. May 3, 2016) (en banc) (Dennis, J., dissenting) (quoting *Powers v. United States*, 446 F.2d 22, 24 (5th Cir. 1971)). Stated otherwise, "[a] district court must hold an evidentiary hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *United States v. Rivas-Lopez*, 678 F.3d 353, 358 (5th Cir. 2012) (second alteration in original) (quoting 28 U.S.C. § 2255(b)).

Applying this standard here, we are convinced that the record conclusively establishes that *Rosemond* does not entitle Miller to relief. As discussed *infra*, the record establishes that Henry Miller became aware that Derrick Miller would carry a firearm during the August 2003 bank robbery before the pair entered the bank. Rather than opt out based on that knowledge, Henry Miller continued to participate in the criminal venture by consummating the armed bank robbery, fleeing, and crossing a state line to "clean" and share in the proceeds. Because this record evidence conclusively satisfies *Rosemond*, the district court was not required to hold an evidentiary hearing before dismissing the petition.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED. Henry Miller's motions for appointment of appellate counsel, for summary reversal, to file an out-of-time reply to the Government's response to his motion for summary reversal, to strike an argument in the Government's brief, and for clarification on the issue of subject matter jurisdiction are DENIED as moot.