# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-40741

United States Court of Appeals
Fifth Circuit

**FILED**
October 22, 2019

Lyle W. Cayce
Clerk

Consolidated with 19-40755

In re:  JULIUS JEROME MURPHY,

     Movant

On Motion for Authorization to File Successive Petition
for Writ of Habeas Corpus in the
United States District Court for the Eastern District of Texas
USDC No. 5:19-CV-112

Before HO, DUNCAN, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

Julius Jerome Murphy was convicted of capital murder and sentenced to death in August 1998. He now seeks authorization to file a successive petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2244(b)(2)(B). For the reasons explained below, Murphy's motion for authorization is DENIED.

On September 18, 1997, Julius Murphy, Chris Solomon, Javarrow Young, Christina Davis, Marie Woods, Elena DeRosia, and Philip Schute gathered at Murphy's house where they drank alcohol and smoked marijuana.[1]

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] In his petition, Murphy alleges the blunt he smoked was "wet," meaning it had been dipped in embalming fluid, which often contains PCP, causing hallucinations, delusions, disorientation, and loss of consciousness.

No. 19-40741
c/w No. 19-40755

Thereafter, the group, heading to Texarkana, split up in two separate cars – Murphy, Solomon, Davis, and Woods were in one car, while Young, DeRosia, and Schute were in the other. The two cars pulled over at a gas station, and Solomon, who had a gun in the glove compartment of his car, said that he saw a man who was having car trouble and suggested going over to "jack him." Young, whose child was in his car at the time, did not want to be involved, so he drove to a Waffle House across the Interstate. Solomon drove his car back to where the stranded man – Jason Erie – was and helped Erie jump his car. Solomon then got back into his own car, and Erie came over and gave him five dollars for his help. After Erie returned to his car, Woods took Solomon's gun from the glove compartment and handed it to Murphy. Murphy and Solomon exited the vehicle and gunshots followed. Erie had been robbed and shot in the head and later died from that gunshot wound. Murphy, Solomon, and Woods were apprehended by police, and Murphy and Solomon were charged with capital murder. The State's only two fact witnesses who testified against Murphy at his original trial were Javarrow Young and Christina Davis.

After Murphy was convicted by a jury of capital murder and was sentenced to death, he challenged his conviction and sentence in state and federal court. In the instant motion, Murphy seeks authorization to file a successive petition in the district court alleging the district attorney's office failed to disclose threats of prosecution and promises of leniency to its two key witnesses, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). Specifically, he alleges the State threatened to charge Young and Davis with murder and conspiracy to commit murder if they did not testify against Murphy; and, Murphy obtained affidavits from Young and Davis to that effect. Prior to filing this motion in our court, Murphy brought his *Brady* and *Giglio* claims to Texas state court. After the TCCA

2

No. 19-40741
c/w No. 19-40755

granted permission for Murphy to file a successive state habeas petition, the trial court held an evidentiary hearing on the *Brady* and *Giglio* claims and found the State's evidence to be more credible than Murphy's.[2] Accordingly, the TCCA denied Murphy's successive state habeas petition.

For our court to grant Murphy permission to file a successive habeas petition, he must make a prima facie showing that:

> (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

§ 2244(b)(2)(B). A prima facie showing requires "a sufficient showing of possible merit to warrant a fuller exploration by the district court . . . [and if it] appears reasonably likely that the application satisfies the stringent requirements for the filing of a second successive petition" then the petition should be granted. *Reyes-Requena v. United States*, 243 F.3d 893, 899 (5th Cir. 2001). As this court in *Reyes-Requena* noted, the requirements for filing a successive petition are stringent. *Id.*

Simply put, the record in the instant case does not reflect that Murphy exercised due diligence in investigating the truthfulness of Davis' and Young's testimonies to support his *Brady* and *Giglio* claims, nor that this newly discovered information proves, by clear and convincing evidence, that but for the prosecution's misconduct, no reasonable factfinder would have found

---

[2] Neither Young nor Davis were present at the evidentiary hearing, despite Murphy's attempts to subpoena them. The trial court relied solely upon their affidavits in determining the witnesses' credibility. Conversely, the State's witnesses were present and available for cross examination.

No. 19-40741
c/w No. 19-40755

Murphy guilty. As for due diligence, Murphy's trial concluded in 1998 and the Davis and Young affidavits came to light in 2015. Murphy offers no evidence why the "factual predicate" for their claims of witness intimidation could not have been discovered through due diligence during that seventeen-year interval. Indeed, the record reflects that Murphy long ago had every reason to explore such claims—for example, Young testified *at trial* that the police threatened him before he gave his initial statement. *See Johnson v. Dretke*, 442 F.3d 901, 911 (5th Cir. 2006) (explaining that a petitioner cannot show due diligence if he had notice "of the existence of the factual predicate and of the factual predicate's ultimate potential exculpatory relevance"). Moreover, even with the recanting testimonies of Davis and Young, Murphy can not demonstrate facts indicative of his innocence. *See In re Davila*, 888 F.3d 179, 186 (5th Cir. 2018); *see also Summers v. Dretke*, 431 F.3d 861, 872 (5th Cir. 2005) (noting this circuit views recanting affidavits with "extreme suspicion").[3] Additionally, Murphy offers no case law supporting the proposition that the alleged prosecutorial misconduct would lead any reasonable factfinder to discredit his own oral and written confessions in which he admitted to murdering Erie. Specifically, Murphy "confessed to the crime in a written statement. Afterwards, when being booked into jail, [Murphy] stated, 'I bet y'all never had anybody stand up and say straight out that he killed' someone." *Ex parte Murphy*, 560 S.W.3d 252, 253 (Tex. Crim. App. 2018) (Alcala, J., dissenting), *cert. denied sub nom. Murphy v. Texas*, 139 S. Ct. 2638 (2019). Because Murphy has not satisfied the stringent requirements under 28 U.S.C.

---

[3] Notably, neither Young nor Davis were eye witnesses to the shooting, and their 2015 affidavits do not provide direct evidence or support for their recanting statements which would require a reasonable factfinder to conclude that Murphy was not the shooter.

No. 19-40741
c/w No. 19-40755

§ 2244(b)(2), his motion for authorization to file a successive petition for a writ of habeas corpus is DENIED.