**Charles CHRISTOPHER,**

v.

**UNITED STATES of America.**

**No. CIV. A. 99–602L.**

United States District Court,
D. Rhode Island.

May 10, 2001.

Mortimer C. Newton, Providence, RI, Terrence Reed, Alexandria, VA, for plaintiff.

Anthony C. DiGioia, U.S. Attorney's Office, Providence, RI, for defendant.

*MEMORANDUM AND ORDER*

LAGUEUX, District Judge.

This matter is before the Court on the motion of the petitioner, Charles Christopher, to vacate, set aside or correct sen-

tence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the motion is denied. No evidentiary hearing is necessary.

*Facts and Travel*

In 1993, petitioner and George W. Reeder were indicted by a federal grand jury on multiple counts of violation of 18 U.S.C. §§ 1343 (wire fraud) and 2314 (interstate transportation of stolen property). Those charges resulted from the involvement of the defendants in the 1988 acquisition of American Universal Insurance Holding Company (American) and Diamond Benefits Life Insurance Company (Diamond) by Resolute Holding Company (Resolute).

Christopher was Resolute's vice-president. Reeder was Resolute's majority stockholder. Since American was a Rhode Island corporation, Resolute needed regulatory approval from the Rhode Island Department of Business Regulation (RIDBR) in order to acquire American. Similarly, because Diamond was an Arizona corporation with its principal offices in California, Resolute needed the approval of both of those states' insurance regulators in order to acquire Diamond.

In seeking the requisite regulatory approvals on Resolute's behalf, Christopher and Reeder made certain assurances to state regulators, including that Resolute would not use the acquired companies' assets to pay for the purchase and that the collateral tendered by Resolute in its acquisition of the companies would be cleared of all pre-existing liens prior to closing. In fact, American and Diamond assets were used, *inter alia*, to pay part of the purchase price and to clear liens on the real estate owned by Reeder that was used as collateral by Resolute. After the acqui-

sition, both American and Diamond went into receivership. Moreover, contrary to assurances made to the California, Arizona and Rhode Island regulators, encumbrances on the collateral property were not cleared prior to Resolute's acquisition of American and Diamond.

Prior to trial, the cases against Reeder and Christopher were severed. Reeder's trial was continued due to his illness and Christopher proceeded to trial.[1] In July 1995, a district court jury adjudged Christopher guilty of 11 counts of wire fraud and 10 counts of interstate transportation of stolen property.

In December 1996, Senior United States District Judge Francis J. Boyle sentenced Christopher to consecutive terms totaling 121 months of imprisonment on three of the counts of conviction. On the remaining counts, the court imposed sentences of 60 to 120 months of imprisonment, to be served concurrently with the 121 month term. On each count the court imposed concurrent terms of three-years of supervised release. In addition, Christopher was ordered to pay restitution totaling $26.7 million and a special assessment of $1050.

Christopher appealed from his conviction and sentence. After modifying the restitution order to exclude losses for which Christopher had not been charged in the indictment, the First Circuit affirmed the conviction and sentence. *United States v. Christopher*, 142 F.3d 46 (1st Cir.1998). Christopher's subsequent petition for a writ of certiorari was denied by the Supreme Court on December 14, 1998.[2]

On December 14, 1999, exactly one year following the denial of certiorari, Christopher filed the instant § 2255 motion. Ini-

---

1. Ultimately, Reeder was convicted of five counts of violation of 18 U.S.C. § 1343 and five counts of violation of 18 U.S.C. § 2314.

2. *Christopher v. U.S.*, 525 U.S. 1054, 119 S.Ct. 617, 142 L.Ed.2d 557 (1998).

tially, petitioner proffered three grounds in support of his motion. Specifically, he alleged that: (1) the sentence imposed was based on inaccurate information; (2) the government suppressed exculpatory evidence relevant to his conviction and sentence; and (3) that his conviction was obtained and sentence determined through the use of false testimony which the government knew or should have known was false, all in deprivation of his Fifth Amendment right to due process of law.

The government filed an objection to the § 2255 motion. Thereafter, on August 8, 2000, petitioner filed a document captioned "Movant's Amended Motion Pursuant to 28 U.S.C. § 2255, and Response to Government Objections." In addition to addressing the arguments proffered by the government in objecting to his prayer for § 2255 relief, Christopher's submission set forth a new, additional claim in support of his motion to vacate sentence. Specifically, he contended that his sentence was violative of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

In *Apprendi*, the Court held that the United States Constitution requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 488–90, 120 S.Ct. 2348, 2362–63. In substance, Christopher argues that because the consecutive sentences imposed on three of the wire fraud counts totaled 121 months he received a sentence in excess of the greatest statutory maximum applicable to any one of the counts of conviction. The offenses of conviction which carry the highest statutory maximum are violation of 18 U.S.C. § 2314 (transportation of stolen goods) which is 10 years.

On November 22, 2000, Christopher filed a pleading captioned "Second Amended Motion Pursuant to 28 U.S.C. § 2255." In that document, Christopher purported to amend his § 2255 motion to add a claim for relief under *Cleveland v. United States*, 531 U.S. 12, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000).

In *Cleveland*, the Court held that state and municipal licenses in general, and Louisiana's video poker licenses in particular, did not amount to "property" for purposes of 18 U.S.C. § 1341 (mail fraud), in the hands of the licensor. *Id.* at 15, 121 S.Ct. 365, 368. Relying on *Cleveland*, Christopher asserts that his wire fraud convictions should be vacated because the regulatory approvals obtained on Resolute's behalf did not amount to "property" under § 1343.

Neither "amendment" was filed within the one-year time limitation period applicable to the filing of § 2255 motions. *See* 28 U.S.C. § 2255. Moreover, petitioner neither sought nor obtained leave from this court to amend his initial motion. Accordingly, as set forth in the Court's order dated December 1, 2000, both "amendments" are regarded as motions for *leave* to amend. Pursuant to the Court's order, the parties have filed supplemental memoranda addressing whether the grant of either proposed amendment is appropriate. Both the motions to amend and petitioner's § 2255 motion are now in order for determination.

*Discussion*

*The Motions to Amend.*

Neither § 2255 nor the Rules Governing Section 2255 Proceedings addresses amendment of a § 2555 motion. However, Rule 12 provides that:

> [i]f no procedure is specifically prescribed by these rules, the district court * * * may apply the Federal Rules of

Criminal Procedure or the Federal Rules of Civil Procedure, whichever it deems most appropriate, to motions filed under these rules.

Rules Governing Section 2255 Proceedings for the United States District Courts, R. 12.

Rule 15 of the Federal Rules of Civil Procedure applies to § 2255 proceedings. *United States v. Barrett*, 178 F.3d 34, 46 (1st Cir.1999), *cert. denied*, 528 U.S. 1176, 120 S.Ct. 1208, 145 L.Ed.2d 1110 (2000). *Accord, United States v. Thomas*, 221 F.3d 430 (3d. Cir.2000). The rule provides in pertinent part:

> (a) Amendments. A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served * * *. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.
>
> \*  \*  \*  \*  \*  \*
>
> (c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
>
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading * * *.

Fed.R.Civ.P. 15.

Christopher's assertions to the contrary notwithstanding, both of his proposed amendments were filed subsequent to the government's filing of its objection to the initial § 2255 motion. Accordingly, the court's grant of leave to amend is a prerequisite to Christopher's pursuit of his *Apprendi* and *Cleveland* claims in the instant § 2255 proceeding.

■ Although Fed.R.Civ.P. 15(a) provides that leave to amend "shall be freely given," amendment need not be permitted when the proposed amendment would be futile. *E.g., Judge v. City of Lowell*, 160 F.3d 67, 79 (1st Cir.1998) (citations omitted). In the instant matter, both amendments would be futile because neither was filed within § 2255's one-year limitation period and because neither proposed amendment relates back to the date of Christopher's filing of his initial petition.

28 U.S.C. § 2255 establishes a one-year time period for the filing of § 2255 motions. The statute provides in pertinent part:

> A 1–year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of-
>
> (1) the date on which the judgment of conviction becomes final;
>
> \*  \*  \*  \*  \*  \*
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.

■ Christopher's conviction became "final" for purposes of § 2255 on December 14, 1998, the date of the Supreme Court's denial of his petition for certiorari. *See Rogers v. United States*, 180 F.3d 349, 352 (1st Cir.1999), *cert. denied*, 528 U.S. 1126, 120 S.Ct. 958, 145 L.Ed.2d 831 (2000). Christopher filed his proposed amendments to his § 2255 motion on August 8, 2000 and November 22, 2000, respectively. Thus, under § 2255(1), neither amendment was timely filed.

■ Further, § 2255(3) is inapplicable here. A right has been "made retroactively applicable to cases on collateral review" as that phrase is employed in § 2255, only when the Supreme Court has either explicitly so stated or has applied the rule in a collateral proceeding. *Sustache–Rivera v. United States*, 221 F.3d 8, 15 (1st Cir. 2000), *cert. denied*, ——U.S.——, 121 S.Ct. 1364, 149 L.Ed.2d 292 (2001), (quoting *In re Vial*, 115 F.3d 1192, 1197 (4th Cir. 1997)). Although *Sustache–Rivera* involved an interpretation of the phrase as employed in the statutory provision governing the filing of successive § 2555 motions, the same construction is also applicable in the time-limitation context. *See United States v. Hopwood*, 122 F.Supp.2d 1077 (D.Neb.2000) (stating that the language of the two provisions was sufficiently similar that they should be construed in same manner).

■ Christopher seeks leave to amend his § 2255 motion to add claims under *Apprendi* and *Cleveland.* Assuming, arguendo, that *Apprendi* establishes a new rule of constitutional law, it is clear that the Supreme Court has not made the rule retroactive to cases on collateral review. *Sustache–Rivera*, 221 F.3d at 15. Similarly, neither in the *Cleveland* decision itself, nor in any subsequent decision, has the Supreme Court addressed Cleveland's retroactivity. Accordingly, neither proposed amendment satisfies the tolling requirements of § 2255(3).

■ Christopher argues that under the doctrine of equitable tolling his proposed amendments should be considered as timely filed. The First Circuit has not ruled on whether § 2255's time limitation period is subject to equitable tolling. However, to the extent the doctrine is otherwise available, this Court declines petitioner's invitation to apply it in the instant matter. In 2255(3), Congress has delineated the circumstances in which the Supreme Court's pronouncement of new rules of law warrant a tolling of the statutory limitation period. To apply equitable tolling here would, in effect, amount to a judicial expansion of those parameters and would be in conflict with Congress' intent.

Moreover, if either motion to amend was granted, neither proposed amendment would "relate back" to the date of Christopher's filing of his original § 2255 motion for the reason that neither of the additional claims satisfies the relation-back requirements of Fed.R.Civ.P. 15(c)(2).[3]

Pursuant to Rule 15(c)(2), an amended claim relates back if it arose out of the same conduct, transaction or occurrence set forth in the original pleading. "In determining whether the claim arises out of the same conduct or occurrence, '[t]he pertinent inquiry * * * is whether the original complaint gave the defendant fair notice of the newly alleged claims.'" *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 815 (2nd Cir.2000) (*quoting Wilson v. Fairchild Republic Co.*, 143 F.3d 733, 738 (2nd Cir.1998)). "[A]n amendment which, by way of additional facts, clarifies or amplifies a claim or theory in the petition may, in the District Court's discretion, relate back to the date of that petition if and only if the petition was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case." *Thomas*, 221 F.3d at 431.

In order for an untimely § 2255 claim to "relate back" under Rule 15(c)(2), "the untimely claim must have more in common with the timely filed claim than the mere

---

**3.** Fed.R.Civ.P. 15(c)(1) is not relevant where, as here, amendments to a § 2255 motion are at issue. *Davenport v. United States*, 217 F.3d 1341, 1344 n. 7 (11th Cir.2000), *cert. denied*, —— U.S. ——, 121 S.Ct. 1232, 149 L.Ed.2d 141 (2001).

fact that they arose out of the same trial and sentencing proceedings." *Davenport v. United States,* 217 F.3d 1341, 1344 (11th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1232, 149 L.Ed.2d 141 (2001). *Accord, United States v. Pittman,* 209 F.3d 314 (4th Cir.2000); *United States v. Duffus,* 174 F.3d 333 (3d Cir.1999), *cert. denied,* 528 U.S. 866, 120 S.Ct. 163, 145 L.Ed.2d 138 (1999); *United States v. Craycraft,* 167 F.3d 451 (8th Cir.1999). To conclude otherwise "would be tantamount to judicial rescission of [§ 2255's] statute of limitations period." *United States v. Espinoza–Saenz,* 235 F.3d 501, 501 (10th Cir.2000)(*citing Pittman,* 209 F.3d at 318).

■ It is clear that petitioner's *Apprendi* and *Cleveland* claims do not relate back to the time of his filing of his initial motion to vacate sentence. The proposed amendments do not clarify or amplify claims presented in the original § 2255 motion. Rather, both proposed amendments contain new, distinct claims which are not, even tangentially, related to the grounds initially proffered by Christopher in seeking § 2255 relief.

In sum, because neither of Christopher's proposed additional claims can be considered as timely filed under either § 2255's time-limitation provisions or the "relation back" doctrine, allowance of the proposed amendments would be futile. Accordingly, both of petitioner's motions to amend are denied.

*The § 2255 motion*

Remaining before the Court for consideration are the three grounds proffered by Christopher in his initial § 2255 motion.

Christopher's first claim is that he was sentenced on the basis of inaccurate information in violation of his right to due process. In support of this assertion, Christopher points out that he received a lengthier sentence than did Reeder.

Christopher argues that the two sentences were based on inconsistent sentencing guideline calculations, including amount of loss determinations, for the same offense.

Second, Christopher alleges that the government suppressed exculpatory evidence in violation of his right to due process. Third, petitioner alleges that he was denied due process by the prosecution's use of testimony during trial and at sentencing which the government knew or should have known was false.

28 U.S.C. § 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct sentence.

In order to be cognizable under § 2255, claims based on other than constitutional or jurisdictional grounds must present exceptional circumstances that justify permitting a collateral attack. That is, the alleged error must amount to "a fundamental defect which inherently results in a complete miscarriage of justice" or "an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962). Errors warranting a reversal on direct appeal will not necessarily support a collateral attack. *Knight v. United States,* 37 F.3d 769, 772 (1st Cir. 1994). *See United States v. Addonizio,* 442 U.S. 178, 184, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Section 2255 is not a substitute for direct appeal. *United States*

*v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

Although cloaked in a claim of a denial of due process, Christopher's claim that his sentence was based on inaccurate information is, in fact, no more than a challenge to the court's sentencing determination under the sentencing guidelines. In substance, Christopher alleges that his guideline range was incorrectly calculated. However, Christopher has not made the requisite showing of "exceptional circumstances." Thus, Christopher's claim of sentencing error is not cognizable in this proceeding.

■ Moreover, none of the grounds which Christopher now proffers in support of his § 2255 motion were presented on appeal. Thus, he is procedurally precluded from pursuing those claims in the instant proceeding unless he demonstrates both "cause" for the default and "prejudice" or, alternatively, that he is "actually innocent." *E.g., Brache v. United States,* 165 F.3d 99, 102 (1st Cir.1999).

As "cause" for failing to raise some of his claims, Christopher argues that those claims were either unavailable to him prior to his submission of his appellate brief, or involved collateral matters which were not subject to consideration on direct appeal from his conviction. Christopher contends that "prejudice" exists in that, as the result of the sentencing court's reliance on inaccurate information, he received a harsher sentence than he would have if such erroneous information had not been considered. As set forth below, Christopher's allegations that his sentence was based on inaccurate information are not persuasive. Thus, he cannot demonstrate "prejudice" and is procedurally precluded from litigating his claims in the instant proceeding. In any event, considered on the merits, each of the grounds proffered

by Christopher in support of his § 2255 motion fails.

There are several allegations underlying Christopher's claims that his conviction was obtained and that he was sentenced on the basis of inaccurate information. First, he challenges the court's loss calculation under the sentencing guidelines as overstating the actual amount of loss.

At sentencing, the court determined that the total loss attributable to Christopher amounted to $26.7 million. In part, the court relied on the testimony of Diamond's special deputy receiver, Lawrence Warfield.

During Christopher's sentencing hearing, Warfield testified, *inter alia,* that, other than realty known as "Florence Gardens," Diamond received no assets in exchange for $18 million in cash which had been received by Diamond in conjunction with its assumption of certain annuity obligations of the Life Assurance Company of Pennsylvania (LACOP) but diverted by Christopher.

Christopher now alleges that Warfield's testimony was false. Specifically, Christopher argues that at the time of his testimony Warfield was aware of an anticipated settlement of a civil suit brought by Diamond against American. Christopher claims that the loss amount should have been reduced by the value of assets eventually received by Diamond as part of the civil settlement.

However, Christopher's underlying legal theory, that the loss amount was subject to offset, has been considered and rejected by both the sentencing court and the Court of Appeals in the direct proceedings. *Christopher,* 142 F.3d at 56. Accordingly, petitioner's claim that the loss amount was overstated by the amount of the anticipated settlement is simply incorrect. Thus, whether Warfield was aware of the poten-

tial settlement amount is of no consequence.

Christopher also challenges the two-level enhancement that he received for causing Diamond's insolvency. Specifically, Christopher contends that the sentencing court's offense level adjustment was unsupported by credible evidence.

The sentencing court's determination that Christopher's misdeeds had rendered Diamond insolvent was supported by Warfield's testimony. At Christopher's sentencing hearing, Warfield testified that, although Diamond was experiencing significant cash-flow difficulties, it remained viable until Christopher improperly diverted $18 million that Diamond received from LACOP in conjunction with Diamond's assumption of $31 million of LACOP'S annuity obligations. On appeal, the Court of Appeals held that the district court's finding that Christopher had caused Diamond's insolvency was not clearly erroneous. *Christopher*, 142 F.3d at 57.

In support of his attack on the veracity of Warfield's testimony and, in turn, the court's determination that petitioner's criminal conduct caused Diamond's insolvency, Christopher relies on a report prepared by Diamond's expert witness, Edward Buttner, in conjunction with a subsequent, related civil action. In his report, Buttner opines that, as of December 31, 1997, Diamond was "statutorily insolvent" as that phrase is employed under Arizona law.

Christopher's claim amounts to no more than an impermissible attempt to relitigate the solvency issue in the instant proceeding. Moreover, Buttner's report, which was prepared well after the conclusion of direct review of Christopher's conviction, neither refutes Warfield's testimony nor provides any indicia that Warfield testified falsely. In substance, Buttner's report is of no significance.

Next, in a thinly veiled attempt to relitigate the jury's determination that he was guilty of wire fraud and to revisit the sentencing judge's application of an upward adjustment in Christopher's offense level due to his violation of regulatory orders, Christopher alleges that Nancy Mayer, former RIDBR chief legal counsel, testified falsely at trial concerning: (1) RIDBR's lack of knowledge of Christopher's pending personal bankruptcy, and (2) the regulators' requirement that all prior liens on collateral securing Resolute's acquisition of American be cleared prior to May 27, 1988, the date of RIDBR's conditional approval of Resolute's purchase of American.

During Christopher's criminal trial, Mayer testified concerning RIDBR's requirement that the collateral securing the American acquisition be encumbrance-free as of the time of Resolute's acquisition of American. The conditional order approving the transaction was issued on May 27, 1988. Change of ownership occurred on that same day. However, as set forth in the conditional order, final regulatory approval of the transfer was not issued until Resolute's submission of title insurance policies for the collateral properties, "effective as of the closing date" which indicated that all prior liens had been satisfied. At trial and on appeal, Christopher contended that the regulators did not require that the encumbrances be cleared by May 27, 1988, but rather, that the conditional order required only that title policies have an "effective date" of May 27, 1988, thus permitting the liens to be cleared subsequent to the date of the conditional order. Both the jury and the Court of Appeals rejected this contention.

In an attempt to revisit that issue here, Christopher argues that the falsity of May-

er's testimony pertaining to RIDBR's lien-clearing requirements is evidenced by her July and December 1996 civil deposition testimony. However, an examination of Mayer's deposition testimony does not support Christopher's analysis.

In her deposition, Mayer distinguished between transfer of ownership of American to Resolute and "final" regulatory approval of the transaction. However, this distinction does not contradict her trial testimony concerning the fact that the encumbrances were to be cleared prior to the issuance of the conditional order. In fact, her deposition testimony is entirely irrelevant with regard to that understanding.

Finally, Christopher alleges that Mayer's trial testimony that prior to issuance of its conditional approval state regulators were unaware of Christopher's personal bankruptcy was false. In support of this contention, Christopher proffers notes taken by two attendees of a December 1997 meeting at which Mayer was also present. Those notes purportedly contain references to the bankruptcy proceeding. However, at best, those writings suggest that Mayer was mistaken in testifying that regulators were unaware of Christopher's bankruptcy. Moreover, Christopher has not demonstrated that this alleged misstatement was material to the outcome of the criminal proceeding.

In sum, none of Christopher's claims that his conviction and sentence were based on false or otherwise inaccurate information are of merit. Accordingly, since all of the legal arguments proffered by Christopher in support of his § 2255 motion are premised on these unfounded factual assertions, such claims also fail.

*Conclusion*

Petitioner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 hereby is denied and dismissed. The Clerk shall enter judgment to that effect forthwith.

It is so ordered.