United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 6, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-51062

_____


CHARLES SIMPSON CHRISTOPHER

                              Petitioner - Appellant

     v.

R D MILES, WARDEN, FEDERAL CORRECTION INSTITUTE BASTROP

                              Respondent - Appellee

_____

          Appeal from the United States District Court
            for the Western District of Texas
_____

Before KING, Chief Judge, and DAVIS and BENAVIDES, Circuit
Judges.

KING, Chief Judge:

     Petitioner-Appellant Charles Simpson Christopher appeals the

decision of the district court denying his request for relief

pursuant to 28 U.S.C. § 2241 from his conviction for eleven

counts of wire fraud and ten counts of interstate transportation

of stolen goods.  Because we conclude that Christopher's claim

fails to satisfy the 28 U.S.C. § 2255 savings clause, we vacate

the district court's judgment and remand with orders to dismiss Christopher's petition for lack of jurisdiction.

I.    FACTS AND PROCEDURAL BACKGROUND

In 1988, Christopher served, for a period of about eighty days, as the vice president of Resolute Holdings Company ("Resolute"). During Christopher's tenure, Resolute applied to three different state regulatory agencies for approval of its proposed acquisition of two insurance companies, Diamond Benefits of Arizona ("Diamond") and American Universal of Rhode Island ("American"). At the time, George Reeder was the president and majority stockholder of Resolute.

In seeking these regulatory approvals, Christopher and Reeder made certain assurances to the state regulators, including an assurance that Resolute would not use the assets of acquired companies to pay for the purchases and an assurance that the collateral Resolute tendered would be clear of any pre-existing liens. Resolute acquired Diamond and American in the summer of 1988. However, contrary to the given assurances, Resolute used the assets of Diamond and American to pay the purchase price and to clear liens on real estate (owned by Reeder) that had been used as collateral by Resolute. After Resolute acquired American and Diamond, Christopher and Reeder looted the companies' assets, converting millions of dollars for their own purposes. Christopher was fired from Resolute in September of 1988. In 1993, both American and Diamond went into receivership.

2

In 1993, Christopher and Reeder were indicted with multiple counts of wire fraud in violation of 18 U.S.C. § 1343 and interstate transportation of stolen goods in violation of 18 U.S.C. § 2314. Both statutes prohibit schemes to obtain "money or property by means of false or fraudulent pretense." 18 U.S.C. § 1343 (2000); id. § 2314. The indictment alleges Christopher and Reeder had acquired both the regulatory approvals and money by means of fraud and false representations.

After a 1995 jury trial, Christopher was convicted in the District Court for the District of Rhode Island with eleven counts of wire fraud and ten counts of interstate transportation of stolen goods. The court sentenced Christopher to a term of imprisonment of 121 months, three years of supervised release, and restitution to American and Diamond in the total amount of $26,700,000.

Christopher moved for a new trial on the grounds that his convictions were invalid because he had not defrauded anyone out of a recognizable property interest. The district court denied the motion, finding that the regulatory approvals that Resolute had obtained qualified as property interests within the meaning of the statutes. Christopher appealed this finding, and the First Circuit affirmed. United States v. Christopher, 142 F.3d 46 (1st Cir. 1998).

Christopher then filed a timely petition to vacate his sentence pursuant to 28 U.S.C. § 2255 in the Rhode Island

3

district court. His § 2255 petition did not assert that regulatory approval was not a property interest; at the time, First Circuit precedent foreclosed such an argument. United States v. Bucuvalas, 970 F.2d 937, 945 (1st Cir. 1992) (holding that alcoholic beverage and entertainment licenses constituted "property" within the meaning of the mail fraud statutes). After Christopher filed his § 2255 petition, the Supreme Court, in United States v. Cleveland, 531 U.S. 12 (2000), held that a government's interest in licensing an activity was not a property interest for purposes of conviction under the mail fraud statutes. Id. at 15 ("We conclude that permits or licenses of this order do not qualify as 'property' within § 1341's compass. It does not suffice, we clarify, that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim.").

Christopher then filed a motion to amend his § 2255 petition to include a claim based on Cleveland. The district court held that Christopher's Cleveland claim was untimely and that, even assuming Cleveland stated a new rule of constitutional law, the case did not apply retroactively. Christopher v. United States, 146 F.Supp.2d 146, 151 (D.R.I. 2001). Christopher did not thereafter continue to pursue relief on these grounds under § 2255.

4

In November 2001, Christopher filed a petition for habeas relief pursuant to 28 U.S.C. § 2241 in the District Court for the Western District of Texas (where he is incarcerated), rearguing his <u>Cleveland</u> claim.  The magistrate judge assigned to the case found that § 2241 relief was available to Christopher because he had satisfied the § 2255 "savings clause" test.  However, the magistrate also found that Christopher's conviction was valid notwithstanding <u>Cleveland</u> because both the grand jury indictment and the trial jury instruction described the scheme as a fraudulent attempt to obtain money, not a fraudulent attempt to obtain the regulatory licenses that <u>Cleveland</u> had invalidated as a grounds for conviction under the mail fraud statutes.  The district court adopted the magistrate's position and issued a final judgment denying relief.

Christopher now appeals to this court, raising the <u>Cleveland</u> issue once again.

## II.   CHRISTOPHER'S § 2241 CLAIM BASED ON <u>CLEVELAND</u>

Christopher brought an initial § 2255 petition in the district court in which he was convicted; this petition did not raise the <u>Cleveland</u> issue.  When he attempted to bring a second § 2255 petition to address the applicability of this intervening Supreme Court decision to his own case, the district court denied the petition as failing to meet the stringent statutory standards for filing a second or successive petition.  <u>See</u> 28 U.S.C. § 2255 (2000):

5

A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain —

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>
> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

Id. Because Cleveland did not state a retroactively applicable new rule of constitutional law, the district court rejected Christopher's successive § 2255 petition.

Christopher now attempts to raise the Cleveland issue by means of a § 2241 petition.[1] While § 2241 is more typically used to challenge the execution of a prisoner's sentence, a federal prisoner may bring a petition under § 2241 to challenge the legality of his conviction or sentence if he can satisfy the mandates of the "savings clause" of § 2255. Reyes-Requena v. United States, 243 F.3d 893, 900-01 (5th Cir. 2001).

Under § 2241, we review the district court's findings of fact for clear error and conclusions of law de novo. Wesson, 305 F.3d at 346. Section 2255 states:

---

[1] Because Christopher is petitioning under § 2241, he is not required to obtain a certificate of appealability in order to proceed on appeal. Wesson v. United States Penitentiary Beaumont, Tx., 305 F.3d 343, 346 (5th Cir. 2002).

6

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court denied him relief, <u>unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention</u>.

28 U.S.C. § 2255 (2000) (emphasis added). The burden falls on the petitioner to demonstrate that the § 2255 remedy is inadequate or ineffective. <u>Reyes-Requena</u>, 243 F.3d at 901. We have, however, recognized that the savings clause represents only a "limited exception" and that the petitioner's burden in demonstrating the inadequacy of the § 2255 remedy is a stringent one. <u>Id.</u> at 901-02.

A petitioner seeking relief under the § 2255 savings clause must demonstrate three things: (1) his claim is based on a retroactively applicable Supreme Court decision; (2) the Supreme Court decision establishes that he was "actually innocent" of the charges against him because the decision decriminalized the conduct for which he was convicted; and (3) his claim would have been foreclosed by existing circuit precedent had he raised it at trial, on direct appeal, or in his original § 2255 petition. <u>Id.</u> at 904; <u>see also</u> <u>Jeffers v. Chandler</u>, 245 F.3d 827, 830 (5th Cir. 2001). "[T]he core idea is that the petitioner may have been imprisoned for conduct that was not prohibited by law." <u>Reyes-Requena</u>, 243 F.3d at 903.

7

We can assume *arguendo* that Christopher is able to satisfy the first and third requirements, because he fails to demonstrate that the intervening Supreme Court decision, Cleveland, renders him actually innocent of the charges for which he was convicted. The magistrate judge and the district court found that Christopher satisfied this prong merely by "claiming that he has been imprisoned for non-criminal conduct," noting that we concluded that the petitioner in Reyes-Requena satisfied the actual innocence prong of the savings clause test by claiming that he was imprisoned for conduct that had later been decriminalized. However, this conclusion misreads the Reyes-Requena test.

The petition in Reyes-Requena was convicted pursuant to 18 U.S.C. § 924(c)(1) of the "use" of a firearm during a drug-trafficking offense, even though the facts of the case demonstrated only that he had been found in possession of the firearms. Reyes-Requena, 243 F.3d at 904 n.29. When an intervening Supreme Court decision clarified that a conviction for "use" under § 924(c)(1) required the "active employment" of the firearm, Bailey v. United States, 516 U.S. 137, 145 (1959), Reyes-Requena (who had already filed an unsuccessful § 2255 petition) brought a successive § 2255 petition based on this new decision. We held that Bailey did not meet the requirements for a second or successive § 2255 petition but that, treating the petitioner's request as a § 2241 petition, his claim fell within

8

the scope of the § 2255 savings clause. <u>Reyes-Requena</u>, 243 F.3d at 900-01.

We stated that the petitioner satisfied the actual innocence prong by claiming that he had been imprisoned for non-criminal conduct. However, important to this conclusion was the government's concession that, under <u>Bailey</u>, Reyes-Requena's conviction for use of a firearm could not stand; there was no evidence in the record that Reyes-Requena had actually used the weapon during the commission of the drug-trafficking offense. <u>Id.</u> at 904 & n.29. Thus, the petitioner's claim that he was actually innocent <u>along with</u> the government's concession that the facts would not support conviction under the new interpretation of the law allowed the petitioner to satisfy the actual innocence prong. <u>See also</u> <u>Jeffers</u>, 253 F.3d at 831 ("'Actual innocence' for the purposes of our savings clause test could only be shown if Jeffers could <u>prove</u> that based on a retroactively applicable Supreme Court decision, he was convicted for conduct that did not constitute a crime.") (emphasis added).

We must examine the merits of the petitioner's claim to determine whether the intervening Supreme Court decision has rendered him actually innocent of the charges upon which he was convicted. Christopher was, as noted, convicted on eleven counts of wire fraud under § 1343 and ten counts of interstate transportation of stolen goods under § 2314. Christopher argues that the <u>Cleveland</u> decision invalidates his conviction because he

9

was convicted on the grounds that he deprived state regulators of their property interest in issuing regulatory approvals. However, an examination of the indictment and the jury charge reveals that Christopher's crimes went far beyond the fraudulent procurement of regulatory approvals.

While the indictment does charge Christopher with defrauding the state regulators, the indictment also contains multiple allegations that Christopher and Reeder misappropriated money from the insurance companies and their policyholders. For example, Paragraph 34 charges that:

> The DEFENDANTS defrauded American Universal, Canadian Universal [another insurance company], Diamond Benefits, and their policyholders and the holders and beneficiaries of the annuity contracts by false and fraudulent pretenses, representations, and promises and by converting, taking by fraud, and misappropriating to their own use and benefit moneys belonging to American Universal and Diamond Benefits.

Similarly, other paragraphs of the indictment charge the defendants with transferring approximately $18 million owed to Diamond into the defendants' bank account (¶ 36) and using approximately $29 million in monies taken from American and Diamond for personal benefits, to pay off liens on personal real estate, and other purposes "unrelated to the business" of American and Diamond (¶ 37). The indictment nowhere defines "property" under the wire fraud statute to include state regulatory approval. Thus, even assuming that the taking of the regulatory approvals no longer satisfies the statutory definition

10

of "property", the indictment contained sufficient charges for which Christopher could have been convicted "for obtaining money or property by means of false or fraudulent pretenses." Unlike the defendant in <u>Cleveland</u> who was charged under the wire fraud statutes solely with the fraudulent acquisition of regulatory licenses, Christopher was charged with fraud both in acquiring the licenses and in looting the insurance companies of their assets.

In addition, the jury charge did not instruct the jury that regulatory approval constituted a property interest within the meaning of the statute. In fact, the jury charge makes only two references at all to the regulatory licenses:

> The Defendant denies these allegations and has pleaded not guilty claiming that there was no scheme to defraud. That he made full disclosure to all the regulatory agencies.
>
> . . .
>
> You have heard evidence about various insurance regulatory orders. The violation of an insurance regulatory order is not itself a crime. However, you may consider all evidence or lack of evidence of such a violation in determining whether the Defendant committed the offenses charge[d] in the indictment.

When informing the jury of the nature of the charges brought against Christopher under § 1343, the district court characterized them as follows:

> In Count One the Government contends that beginning in or about November of 1987 and continuing to in or about September 1988 in the District of Rhode Island and elsewhere the Defendant knowingly, willfully and unlawfully devised a scheme to obtain money by false

11

> pretenses . . . in violation of Title 18 United States Code Section 1343.
>
> Counts Two through Eleven also allege that beginning in or about November of 1987 and continuing to in or about September 1988 in the District of Rhode Island and elsewhere the Defendant knowingly, willfully and unlawfully devised a scheme to obtain money by false pretenses . . . all in violation of Title 18 United States Code Section 1343.

Thus, as the magistrate judge correctly noted, the jury charge refers to Christopher's acts as a scheme to obtain <u>money</u>, not property.

Further, the court did not instruct the jury that they must find that Christopher defrauded the regulatory bodies in order to convict him on the wire fraud counts. The court explained the statutory language of § 1343 to the jury by telling them that, in order for the jury to find Christopher guilty, the government must have proven:

> [t]hat the Defendant knowingly devised or knowingly participated in a scheme or artifice to defraud; and second, that the Defendant did so with the specific intent to defraud and, third, in furtherance of the scheme or artifice to defraud the Defendant knowingly transmitted or caused to be transmitted in interstate commerce a wire transfer or money.

Therefore, even in light of <u>Cleveland</u>, the jury charge in this case did not instruct the jury on a legally deficient theory of liability.

Christopher argues that, because the jury returned only a general verdict on the counts, there is no way to know whether they based their guilty verdict upon a finding that the

12

defendants defrauded the insurance companies out of money or that the defendants defrauded the state regulators out of their (now defunct) property interests in the regulatory approvals.  We dealt with a similar situation in United States v. Saks, 964 F.2d 1514 (5th Cir. 1992).  In that case, the defendants were convicted of bank fraud under 18 U.S.C. § 1344, and the district court explained in the jury charge that § 1344 could include a scheme or artifice to defraud others out of either "something of value such as money" or of the "intangible right to honest services."  Id. at 1520.  When the Supreme Court later held that the mail fraud statutes did not cover intangible rights, United States v. McNally, 483 U.S. 350 (1987), the defendants argued that their convictions had to be vacated because the jury received a legally deficient charge.

We found any error in the jury charge to be harmless, concluding that "the 'bottom line' of the scheme or artifice had the inevitable result of effecting monetary or property losses." Id. at 1521.  In other words, the erroneous instruction was harmless beyond a reasonable doubt because, "given the factual circumstances of the case, the jury could not have found the defendant guilty without making the proper factual finding as to that element" of the crime.  Id. (quotation omitted).

Applying the same analysis to this case, we conclude that Christopher's challenge under § 2241 fails.  For one thing, unlike in Saks, the jury charge here did not contain a legally

13

deficient instruction on the law.  Additionally, even if the jury were to have found that Christopher's scheme started with defrauding regulators out of regulatory approvals, the indictment alleged and the evidence at trial demonstrated that the "bottom line" of the scheme was to defraud the insurance companies of their assets.  The fraudulent acquisition of regulatory approvals was merely incidental to the broader purpose of the scheme – defrauding the insurance companies and their policyholders out of millions of dollars.

Because this action unquestionably violates the wire fraud statute, Christopher has failed to prove that he was actually innocent of the crimes with which he was charged and convicted. Accordingly, Christopher is not entitled to use the savings clause of § 2255 to challenge his underlying conviction by petitioning under § 2241.  He has failed to demonstrate that § 2255 was inadequate or ineffective to test the legality of his detention.

III. CONCLUSION

We VACATE the judgment of the district court and REMAND with instructions to DISMISS Christopher's § 2241 petition for lack of jurisdiction.

14