# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

—————

No. 15-10606

—————

United States Court of Appeals
Fifth Circuit

**FILED**

January 16, 2017

Lyle W. Cayce
Clerk

TIOFILA SANTILLANA,

Petitioner–Appellant,

versus

JODY UPTON, Warden, Federal Medical Center Carswell,

Respondent–Appellee.

————————

Appeal from the United States District Court
for the Northern District of Texas

————————

Before JOLLY, SMITH, and HIGGINSON, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Tiofila Santillana filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, claiming that she is entitled to relief under *Burrage v. United States*, 134 S. Ct. 881 (2014). The district court dismissed the petition for lack of jurisdiction, finding that Santillana had not satisfied the "savings clause" of 28 U.S.C. § 2255(e) because *Burrage* is not retroactively applicable on

No. 15-10606

collateral review.  Because *Burrage* applies retroactively, we reverse and remand.

I.

Santillana was convicted in 2009 of distributing a schedule II controlled substance (methadone) that resulted in the death of Brandon Moore, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).  We described the facts in detail in our opinion from Santillana's direct appeal, *United States v. Santillana*, 604 F.3d 192, 193–95 (5th Cir. 2010).

In that appeal, Santillana contended, *inter alia*, that there was insufficient evidence to show that Moore's death "result[ed]" from methadone within the meaning of § 841(b)(1)(C).  Santillana conceded that all three medical witnesses, including her own expert, concluded that methadone was at least a contributing cause of death.  She maintained, however, that the plain meaning of "results" implies "a stronger degree of causation than mere contribution."  She did not explain what that "stronger degree of causation" might be.  We affirmed, explaining that even if Santillana were correct, "there was sufficient evidence for a reasonable jury to conclude that Moore's death resulted from his use of methadone under a heightened standard of causation."  *Santillana*, 604 F.3d at 196–97.

Thereafter, in *Burrage*, the Court "h[eld] that, at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury."  *Burrage*, 134 S. Ct. at 892.  Santillana filed a habeas petition under § 2241, alleging that, under *Burrage*'s interprettation of "results," she is actually innocent of her § 841(b)(1)(C) conviction.  The district court dismissed for lack of jurisdiction because it concluded that,

2

No. 15-10606

absent an explicit holding from the Supreme Court, it lacked the authority to determine whether *Burrage* was retroactively applicable.

## II.

Ordinarily, to attack a conviction collaterally, a federal prisoner can seek relief only by a § 2255 petition. *Kenemore v. Roy*, 690 F.3d 639, 640 (5th Cir. 2012). But under the "savings clause" of § 2255(e), he may file a § 2241 habeas petition if § 2255 is "inadequate or ineffective to test the legality of his detention." Section 2255 is "inadequate or ineffective" if

> (1) the [§ 2241] petition raises a claim "that is based on a retroactively applicable Supreme Court decision"; (2) the claim was previously "foreclosed by circuit law at the time when [it] should have been raised in petitioner's trial, appeal or first § 2255 motion"; and (3) that retroactively applicable decision establishes that "the petitioner may have been convicted of a nonexistent offense."

*Garland v. Roy*, 615 F.3d 391, 394 (5th Cir. 2010) (quoting *Reyes-Requena v. United States*, 243 F.3d 893, 895 (5th Cir. 2001)) (first alteration added). "The petitioner bears the burden of demonstrating that the section 2255 remedy is inadequate or ineffective." *Pack v. Yusuff*, 218 F.3d 448, 452 (5th Cir. 2000).

## A.

Although we have not yet considered whether *Burrage* is applicable retroactively,[1] our caselaw "establishes that new [Supreme Court] decisions interpreting federal statutes that substantively define criminal offenses automatically apply retroactively."[2] Such interpretative decisions "decid[e] for the

---

[1] In *Wade v. Werlich*, 648 F. App'x 425 (5th Cir. 2016) (per curiam), a petitioner raised a *Burrage* claim via a § 2241 petition, and we held that he had not met his burden to show that § 2255 was inadequate or ineffective to test the legality of his detention. We did not explain, however, *why* he had not met the burden, and so the opinion—in addition to being unpublished and thus nonprecedential—does not constitute a holding on any one of the savings-clause prongs.

[2] *Garland*, 615 F.3d at 396 (alteration added); *see also Schriro v. Summerlin*, 542 U.S.

entire country how courts should have read the statute since it was enacted." *Kenemore*, 690 F.3d at 641. They apply retroactively because they "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal . . . ." *Schriro*, 542 U.S. at 352 (quoting *Bousley*, 523 U.S. at 620) (quotation marks omitted). We have held several such Supreme Court decisions to be retroactive.[3]

The district court dismissed Santillana's petition because it concluded that it lacked authority to determine whether *Burrage* was retroactively applicable. It relied on *Tyler v. Cain*, 533 U.S. 656, 662–63 (2001), which held that for a prisoner to file a second or successive habeas petition based on a new rule of constitutional law, the *Supreme Court* must have held the rule to be retroactive to cases on collateral review. But the holding in *Tyler* depends on statutory language providing that the "new rule of constitutional law [be] made retroactive to cases on collateral review *by the Supreme Court*." 28 U.S.C. § 2244(b)(2)(A) (emphasis added).

In contrast, the retroactivity element of our savings-clause analysis is not tethered to a similar statutory limitation. Our precedent requires only that a § 2241 petition be based on a "retroactively applicable Supreme Court decision," without specifying that the Supreme Court must have made the

---

348, 351–52 (2004) ("New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal statute by interpreting its terms . . . .") (citing *Bousley v. United States*, 523 U.S. 614, 620–21 (1998)).

[3] For example, in *United States v. McPhail*, 112 F.3d 197, 199 (5th Cir. 1997), we held that *Bailey v. United States*, 516 U.S. 137 (1995), is retroactive. *Bailey*, 516 U.S. at 142–43, holds that "uses or carries a firearm" in 18 U.S.C. § 924(c)(1) means "active employment of the firearm." Similarly, in *Garland*, 615 F.3d at 397, we held that *United States v. Santos,* 553 U.S. 507 (2008), is retroactive. *Santos*, 553 U.S. at 528 n.7 (2008) (Stevens, J., concurring in the judgment), holds that in certain circumstances, "proceeds" in 18 U.S.C. § 1956 must be defined as "profits." Under the *Marks* rule, Justice Stevens's opinion provides the holding of the Court. *Garland*, 615 F.3d at 399–404.

No. 15-10606

determination of retroactivity.  *Garland*, 615 F.3d at 394.  Indeed, *Garland* states that Supreme Court decisions that substantively interpret federal statutes "*automatically* apply retroactively."  *Id.* at 396 (emphasis added).  We thus proceed to consider the retroactivity of *Burrage*.

On its face, *Burrage* is a substantive decision that interprets the scope of a federal criminal statute.  *See Krieger v. United States*, 842 F.3d 490, 499–500 (7th Cir. 2016) (holding that *Burrage* is a retroactively applicable, substantive decision); *cf. Ragland v. United States*, 784 F.3d 1213, 1214 (8th Cir. 2015) (per curiam) (concluding that *Burrage* challenges are cognizable under § 2255).[4]  At issue in *Burrage* was the meaning of "death or serious bodily injury results." The Court held that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. § 841(b)(1)(C) unless such use is a but-for cause of the death or injury."  *Burrage*, 134 S. Ct. at 892.  That holding "narrow[s] the scope of a criminal statute," *Schriro*, 542 U.S. at 351, because but-for causation is a stricter requirement than are some alternative interpretations of "results."

Indeed, that was the precise issue in *Burrage*.  There, the Eighth Circuit had decided that a drug needed to be only a "contributory cause" of death, and so had affirmed the sentence under § 841(b)(1)(C).[5]  The government conceded that there was no evidence that the victim would have lived but for his drug use.  *Burrage*, 134 S. Ct. at 892.  Because the Eighth Circuit had affirmed "based on a markedly different understanding of the statute," and the government conceded but-for causation, the Court reversed.  *Id.*

---

[4] The government should have disclosed this adverse authority.

[5] *United States v. Burrage*, 687 F.3d 1015, 1021, 1026 (8th Cir. 2012) (citation omitted).

No. 15-10606

Some courts have advanced a different reading of *Burrage*, interpreting it not as a substantive decision but instead as an application of the procedural rules in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Alleyne v. United States*, 133 S. Ct. 2151 (2013).[6]  Accordingly, they have held that *Burrage* is not retroactively applicable.[7]  Those decisions "[are] simply incorrect." *Krieger*, 2016 WL 6872902, at *8.  "The *Burrage* holding is not about who decides a given question (judge or jury) or what the burden of proof is (preponderance versus proof beyond a reasonable doubt)"—those questions are the province of *Apprendi* and *Alleyne*—but "is rather about *what* must be proved." *Id.*  In sum, as a substantive decision narrowing the scope a federal criminal statute, *Burrage* applies retroactively to cases on collateral review.

B.

The government urges us to affirm the dismissal on the third prong of the savings-clause test.  It contends that even if *Burrage* is retroactively applicable, Santillana cannot meet her burden to show that "[she] may have been convicted of a nonexistent offense." *Garland*, 615 F.3d at 394 (quotation marks omitted).  We disagree.

The government's theory is essentially that the record contains evidence that could support a finding of but-for causation, so Santillana's conviction was proper even in light of *Burrage*.  The government relies on our statement from her direct appeal that "there was sufficient evidence for a reasonable jury to

---

[6] *E.g.*, *Dixon v. Warden of FCI Schuylkill*, 647 F. App'x 62, 64 (3d Cir. 2016) (per curiam); *Powell v. United States*, No. 3:09CV2141 EBB, 2014 WL 5092762, at *2 (D. Conn. Oct. 10, 2014).  In *Apprendi*, 530 U.S. at 490, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  In *Alleyne*, 133 S. Ct. at 2155, the Court extended *Apprendi*'s holding to facts that increase the mandatory minimum sentence.

[7] *Dixon*, 647 F. App'x at 64; *Powell*, 2014 WL 5092762, at *2.

conclude that Moore's death resulted from his use of methadone under a heightened standard of causation." *Santillana*, 604 F.3d at 196–97. But that statement does not resolve the savings-clause inquiry. As an initial matter, we did not define "heightened . . . causation" as but-for causation. To the contrary, we noted that Santillana had not identified what "stronger degree of causation" she was arguing for. *Id.* at 196. Moreover, we stated only that a reasonable jury *could* have found heightened causation; we did not hold that it actually did so.

Our precedents make certain that, when determining whether a petitioner can show that he may have been convicted of a nonexistent offense, we must look to what the factfinder actually decided. For example, in *Garland*, the petitioner raised a claim based on *United States v. Santos*, 553 U.S. 507 (2008), in which the Court held that in certain circumstances, "proceeds" in 18 U.S.C. § 1956 must be defined as "profits."[8] Looking to the indictment and jury instructions, we explained that "the Government did not prove or attempt to show that Garland engaged in money laundering with 'proceeds,' narrowly defined as 'profits' rather than as 'gross receipts'"; we concluded that he "was potentially convicted of a nonexistent offense." *Garland*, 615 F.3d at 404.

In contrast, in *Christopher v. Miles*, 342 F.3d 378 (5th Cir. 2003), we held that a petitioner had not met his burden. He had advanced a claim based on *Cleveland v. United States*, 531 U.S. 12, 15 (2000), which held that a government's interest in licensing an activity is not a property interest for purposes of conviction under the mail-fraud statutes. As in *Garland*, we looked to the indictment and jury instructions:

> [E]ven if the jury were to have found that Christopher's scheme started with defrauding regulators out of regulatory approvals, the indictment

---

[8] *Santos*, 553 U.S. at 528 n.7 (Stevens, J., concurring in the judgment).

alleged and the evidence at trial demonstrated that the "bottom line" of the scheme was to defraud the insurance companies of their assets. The fraudulent acquisition of regulatory approvals was merely incidental to the broader purpose of the scheme—defrauding the insurance companies and their policyholders out of millions of dollars.

*Christopher*, 342 F.3d at 385. Because that action "unquestionably violate[d] the wire fraud statute," the petitioner had not shown that he had been convicted of a nonexistent offense. *Id.*

This case looks more like *Garland*. The indictment states that "[t]he cause of Moore's death was acute mixed drug intoxication. More specifically, the combination of methadone and benzodiazepine ("Xanax") in Moore's body caused a synergistic central nervous and respiratory depression that led to irreversible anoxic brain injury . . . ." In Count One, the indictment says that "Moore's [ ] use of [the] methadone resulted in his death," but it makes no other reference to causation. The district court instructed the jury that "[i]f you find the defendant guilty of distributing methadone, then you must determine if the Government has proved beyond a reasonable doubt that Brandon Moore's death resulted from his use of methadone distributed by the defendant."[9] Based on the indictment and instruction, we cannot say that the jury found that methadone was a but-for cause of death. Moreover, unlike in *Christopher*, we cannot say that what the jury *did* find was criminal activity. It is possible that it found that methadone was merely a contributing cause of death, the exact problem in *Burrage*. Thus, Santillana has satisfied her burden to show that she was potentially convicted of a nonexistent offense.

---

[9] The district court additionally instructed the jury that it need not find that Moore's death was a "reasonably foreseeable event from the defendant's perspective." But that does not speak to but-for causation. *See Burrage*, 134 S. Ct. at 887 ("The law has long considered causation a hybrid concept, consisting of two constituent parts: actual cause and legal cause.").

No. 15-10606

The judgment of dismissal is REVERSED and REMANDED.  We place no limitation on the matters that the district court can consider on remand, and we express no opinion on what decisions it should make.